HORTON ET AL., APPELLANTS, *v.* CITY OF DAYTON ET AL., APPELLEES.

(No. 10778—Decided September 20, 1988.)

*James D. Dennis,* for appellants.
*Dayton Law Department, Arthur Harmon* and *Maureen Pero,* for appellees.

FAIN, J. Plaintiffs-appellants Douglas Horton and Walter Reid (hereinafter collectively referred to in the singular as "Horton") appeal from a summary judgment entered in favor of defendants-appellees city of Dayton and Steven Abney (hereinafter collectively referred to in the singular as "Dayton"). Summary judgment was entered in favor of Dayton based upon the conclusion that Dayton's police officer was operating a motor vehicle while responding to an emergency call at the time of his collision with Horton so that, in the absence of willful or wanton misconduct, Dayton was immune from liability pursuant to R.C. 2744.02. Horton did not claim that the conduct of Dayton's police officer was willful or wanton.

Horton claims that the trial court applied an incorrect standard in

deciding Dayton's motion for summary judgment; that Dayton's police officer could not be found to have been engaged in an emergency call for purposes of determining immunity pursuant to R.C. 2744.02 because Dayton's own regulation defined an "emergency run" so as to exclude the circumstances in this case; that summary judgment should not have been entered in Dayton's favor because there was a genuine issue of material fact as to whether Dayton's police officer was on an emergency call at the time of the collision; and that the trial court erred in not granting Horton partial summary judgment on the issue of the negligence of Dayton's police officer in failing to stop within an assured clear distance.

We conclude that since the term "emergency call" is a defined term in R.C. Chapter 2744, any definition of a similar term or even the same term for purposes of Dayton's police regulations may not override the definition in the statute for statutory immunity purposes. We further conclude that the stricter definition of what constitutes an "emergency run" contained in Dayton's police regulations does not constitute a knowing and intelligent waiver of Dayton's statutory immunity from suit. However, we conclude that the evidentiary material presented by Horton in opposition to Dayton's motion for summary judgment, when viewed in a light most favorable to Horton, is sufficient to create a genuine issue of fact as to whether Dayton's police officer was on an emergency call at the time of the collision, even as the term "emergency call" is defined in R.C. 2744.01(A). Since that issue is dispositive of Dayton's claim of statutory immunity, the summary judgment entered in Dayton's favor must be reversed.

## I

In his complaint, Horton alleged that Dayton's police officer negligently collided with the rear of Horton's vehicle while Horton was stopped at a traffic signal. In defense, Dayton claimed that its police officer was responding to a "signal 99" radio code signal issued by the dispatcher, which signal means "officer in trouble needs immediate assistance." Thus, Dayton claimed that its police officer was responding to an emergency call at the time of the collision, so that, pursuant to R.C. 2744.02(B)(1)(a), it would not be liable unless its police officer was operating the vehicle in a willful or wanton manner.

While Horton has alleged that Dayton's police officer was negligent in the operation of its vehicle, Horton has never claimed that Dayton's police officer's conduct was willful or wanton.

Upon Dayton's motion for summary judgment, the trial court determined that there was no genuine issue of material fact, and that it was clear, as a matter of law, that Dayton's police officer was on an emergency call at the time of the collision. Accordingly, the trial court granted summary judgment in Dayton's favor. From that judgment, Horton appeals.

## II

Horton's First Assignment of Error is as follows:

"The trial court erred to the prejudice of the plaintiffs-appellants in not applying the correct standard with regard to determination of defendants-appellees' motion for summary judgment."

Essentially, Horton contends that the trial court failed to view the evidentiary material submitted in opposition to Dayton's motion for summary judgment in a light most favorable to Horton, as required by Civ. R. 56.

On its face, the judgment entry finds that there is no genuine issue of material fact, and that Dayton is en-

titled to judgment as a matter of law because its police officer was responding to an emergency call at the time of the accident.

In the absence of clear indications to the contrary, a trial court is presumed, on appeal, to have correctly followed the law. 5 Ohio Jurisprudence 3d (1978) 109, Appellate Review, Section 552. Accordingly, we must presume, in the absence of any clear indication to the contrary, that the trial court applied the correct standard in deciding Dayton's motion for summary judgment.

In any event, a summary judgment can only be granted as a matter of law. A court reviewing a summary judgment on appeal is obliged to determine, for itself, whether the evidentiary material submitted in support of, and in opposition to, the motion for summary judgment creates a genuine issue of material fact — that is, whether when that evidentiary material is viewed in a light most favorable to the party opposing the motion for summary judgment, reasonable minds can come to only one conclusion, and that conclusion is that summary judgment should be granted as a matter of law. *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924. Thus, even if the trial court applied an incorrect standard in deciding Dayton's motion for summary judgment, that error would be harmless because this court, in connection with Horton's Third Assignment of Error, is obliged to determine, as a matter of law, whether summary judgment was proper, applying the correct standard under Civ. R. 56. Horton's First Assignment of Error is overruled.

## III

Horton's Second Assignment of Error is as follows:

"The trial court erred to the prejudice of the plaintiffs-appellants in granting summary judgment to defendants-appellees based upon R.C. 2744.01 *et seq.* because defendants-appellees violated their regulation specifically defining what constitutes an 'emergency run.' "

Horton contends that since Dayton, in Dayton Police Department General Order 3.02-1, has defined the "emergency operation" of a police cruiser to include the requirement that the overhead lights and siren actually be in operation, and since it is undisputed that Dayton's police officer was not operating the lights and siren at the time of the collision in this case, the police officer was not on an "emergency call" as that term has been redefined by Dayton police regulations. Horton argues that Dayton, as a charter city, has the inherent power to define for itself what will constitute an emergency call for purposes of defining the scope of its immunity from liability.

R.C. 2744.02(A)(2) states that all political subdivisions in Ohio are provided immunity from civil liability "for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.01 (B)(1) provides an exception to that immunity for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by the political subdivision's employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. R.C. 2744.02(B)(1)(a) provides an exception to the exception when the driver is a police officer operating the motor vehicle "while responding to an emergency call" and the operation of

the vehicle does not constitute willful or wanton misconduct.

Thus, R.C. 2744.02 provides a general rule of immunity, an exception to that general rule, and an exception to the exception. The exception to the exception is made to depend upon whether a police officer is responding to an "emergency call" at the time of the collision. "Emergency call" is defined in R.C. 2744.01(A) as meaning "a call to duty including, but not limited to, communications from citizens, police dispatches, and personal observations by police officers of inherently dangerous situations that demand an immediate response on the part of a peace officer."

There is nothing in the statutory definition of "emergency call" to include the requirement that the police officer operate his siren and overhead lights in order to be on an emergency call for purposes of the statutory immunity provided by R.C. 2744.02. This court, while critical of the result, has determined that even under the law preceding the adoption of R.C. Chapter 2744, a police officer need not be operating his siren or overhead lights in order to be deemed to be responding to an emergency call for purposes of invoking immunity from civil liability. *Sichman* v. *Kennaley* (Dec. 18, 1985), Montgomery App. No. 9450, unreported. There is nothing in the definition of "emergency call" contained in R.C. 2744.01 to indicate that the General Assembly intended to incorporate within the definition of an "emergency call" for purposes of statutory immunity a requirement that the police officer operate his siren and overhead lights, however desirable that might be as a policy matter.

Horton contends, however, that Dayton, by the adoption of Police Department General Order 3.02-1, which defines the "emergency operation" of police cruisers as those condi-tions where the emergency lights and siren are in operation, has effectively redefined an "emergency call" for purposes of the statutory immunity provided in R.C. Chapter 2744.

R.C. Chapter 2744 confers immunity from civil tort liability upon all political subdivisions, including charter cities, with certain exceptions. The exception in question depends upon the definition of "emergency call" as that term is used in the provision creating the exception, and that term is defined in R.C. 2744.01. While Dayton may define that term, or similar terms, differently for its own purposes, it may not rewrite the statute by redefining the terms used in the statute. We know of no authority for the proposition that a charter city may, as part of its inherent grant of power under Section 7, Article XVIII of the Ohio Constitution, amend legislation adopted by the General Assembly by redefining the terms used therein.

Perhaps a charter city, or any other city for that matter, might have the inherent power to waive the immunity from tort liability provided in R.C. Chapter 2744. However, such a waiver, like any other waiver, would have to be knowingly and intelligently made. We have reviewed Dayton Police Department General Order 3.02-1. While that order commendably encourages police officers to exercise reasonable care in the operation of their cruisers while responding to emergency calls, including the operation of emergency lights and siren, we do not find that it expresses Dayton's intention to waive its immunity from tort liability.

In a "Notice of Additional Authority" filed after the arguments in this case, Horton refers to Section 1 of the Dayton City Charter, which provides that:

"The inhabitants of the City of Dayton * * * shall be a body politic and

72

corporate by the name The City of Dayton, and as such shall have perpetual succession; may use a corporate seal; may sue and be sued * * * ."

Presumably, Horton intends us to infer from this charter provision that the city of Dayton intended thereby to waive any immunity from suit to which it might otherwise be entitled. We decline to do so.

We infer from the referenced charter provision simply an intention to create a juridical entity, cognizable as a person in the courts. In this connection we note that the immunity from liability provided for in R.C. 2744.02 is not universal, but limited, so that it is not incompatible with the charter provision that the city "may be sued." R.C. 2744.02 admits of the possibility that the city of Dayton may be sued, and successfully sued, under a variety of circumstances. Consequently, we cannot read into the charter's simple provision that the city of Dayton "may sue and be sued" a knowing and intelligent waiver of its immunity from tort liability provided for in R.C. 2744.02.

Horton's Second Assignment of Error is overruled.

IV

Horton's Third Assignment of Error is as follows:

"The trial court erred to the prejudice of the plaintiffs-appellants in granting summary judgment to defendants-appellees because genuine issues of material fact existed as to whether Abney was on an emergency run or call at the time of the subject collision."

Horton contends that even if an "emergency call" must be deemed not to require the operation of the overhead lights and siren, he has still created a genuine issue of material fact as to whether Dayton's police officer was, in fact, responding to an

emergency call at the time of the collision.

Dayton's police officer testified that he was responding to an emergency call, and there seems to be no doubt that there was a dispatch over the radio that would qualify as an emergency call. However, Horton argues that the absence of any reference to this dispatch on the officer's radio card for the day in question, when viewed in a light most favorable to Horton, would support an inference that the police officer was not responding to this emergency call at the time of the collision.

The radio card was an exhibit to the police officer's deposition which Horton submitted to the trial court in opposition to Dayton's motion for summary judgment. Although the police officer tendered an explanation for the absence of any reference to the dispatch on the radio card, the finder of fact would not have been required to accept that explanation.

Also, the fact that the police officer had not turned on his siren and overhead lights, while not sufficient to establish, as a matter of law, that he was not responding to an emergency call for purposes of the statutory immunity provided by R.C. 2744.02, is another fact that, when viewed in a light most favorable to Horton, would support an inference that the police officer was not responding to an emergency call at the time of the collision, especially in view of the fact that Dayton Police Department General Order 3.02-1 would seem to indicate at least an expectation that a police officer will use his siren and overhead lights when responding to an emergency call. See *Maxey* v. *Lenigar* (1984), 14 Ohio App. 3d 458, 462, 14 OBR 578, 582, 471 N.E. 2d 1388, 1391-1392.

Horton also argues that the accident report filled out by Dayton's police officer and Dayton's disciplinary

action in reprimanding the police officer constituted evidence that the officer negligently caused the collision. We conclude that this evidence is immaterial. The issue is not whether Dayton's police officer negligently caused the collision; the issue is whether Dayton is immune from liability for the officer's negligence by virtue of the fact that he was responding to an emergency call at the time of the collision.

We conclude that the absence of any reference to the emergency call on the police officer's radio card on the day in question, and the fact that he was not using his siren and overhead light (especially in view of the clear expectation expressed in General Order 3.02-1 that a police officer would use a siren and overhead light in responding to an emergency call), when viewed in a light most favorable to Horton, would support an inference that Dayton's police officer was not, in fact, responding to an emergency call at the time of the collision. Therefore, we conclude that there was a genuine issue of material fact, so that the summary judgment in Datyon's favor was improvidently granted. Accordingly, Horton's Third Assignment of Error is sustained.

### V

Horton's Fourth Assignment of Error is as follows:

"The trial court erred to the prejudice of the plaintiffs-appellants in not granting partial summary judgment in their favor and against defendants-appellees for negligently failing to stop within the assured clear distance ahead."

Horton moved for partial summary judgment on the issue of the negligence of Dayton's police officer. Horton contends that the police officer's own deposition established, as a matter of law, that the police officer had failed to maintain an assured clear distance ahead, so that he was negligent as a matter of law.

Since we are reversing the summary judgment entered in favor of Dayton, and remanding this cause for further proceedings, we conclude that it is premature to determine whether Horton was entitled to a partial summary judgment in his favor.

Horton's Fourth Assignment of Error is overruled at this time, without prejudice.

### VI

Horton's Third Assignment of Error having been sustained, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN and WILSON, JJ., concur.