**ERIE INSURANCE GROUP et al.**

v.

**BAUM.**

**LIGHTNING ROD MUTUAL INSURANCE COMPANY et al.**

v.

**SCHILLING.**

Municipal Court of Findlay, Ohio.

Nos. 91–CVE–2306 and 91–CVE–1423.

Decided Feb. 4, 1993.

2

*William H. Keis, Jr.,* for plaintiff in case No. 91–CVE–2306, and for defendant in case No. 91–CVE–1423.

*James A. Smith,* for defendant in case No. 91–CVE–2306, and for plaintiff in case No. 91–CVE–1423.

REGINALD J. ROUTSON, Judge.

These consolidated cases come on for consideration by the court as a result of cross-motions for summary judgment filed by the parties. For purposes of this decision, Lightning Rod Mutual Insurance Company and Steven C. Baum shall be referred to in the singular as the "plaintiff," and Erie Insurance Group and David Schilling shall be referred to as the "defendant."

Upon consideration of the motions, the memoranda of law, and the evidentiary material submitted by the parties, the court finds as follows.

## STATEMENT OF FACTS

On December 25, 1989, plaintiff Steven C. Baum, a volunteer fireman for the Vanlue Fire Department, was proceeding east on State Route 37 in Marion Township, Hancock County, Ohio, in response to a fire call. On this occasion, State Route 37 was ice covered and somewhat slippery. As the plaintiff approached the intersection of County Road 180 and State Route 37, he observed a vehicle appearing to back up in his lane of travel. The plaintiff specifically noticed that the vehicle's backup lights were on. Plaintiff applied his brakes in an attempt to avoid a collision. His evasive actions proved unsuccessful and he slid into the vehicle driven by the defendant, David Schilling.

Defendant contends that he had stopped his vehicle to come to the aid of another motorist who had slid his vehicle into a nearby ditch. Defendant recollects that he had come to a stop, observed the condition of the vehicle, and attempted to back his vehicle into a position to illuminate the area. As the defendant began to back his vehicle, he observed no one approaching from the rear. Shortly thereafter, he observed headlights approaching from the rear and unsuccessfully attempted to move forward, given the slippery condition of the road. Moments later, the plaintiff's automobile struck the side and rear of the defendant's vehicle. The collision caused significant damage to the vehicles, but no one was seriously injured. In his deposition, the defendant indicated that it was "not a hugely impactive collision." Plaintiff claims that he was aware of the road conditions and was traveling at approximately thirty to thirty-five miles per hour. The investigating officer could uncover no physical evidence which would establish the actual speed of the plaintiff's vehicle.

## CONCLUSIONS OF LAW

### PLAINTIFF BAUM'S MOTION FOR SUMMARY JUDGMENT ALLEGING IMMUNITY

The court will first address plaintiff Baum's assertion that he is immune from liability pursuant to R.C. 2744.03(A)(6). R.C. Chapter 2744 is Ohio's codification of what is commonly referred to as sovereign immunity. Enacted in 1985, this statute attempts to define those circumstances where governmental agencies and employees are liable for tortious activity.

R.C. 2744.03(A)(6) provides, in pertinent part:

"(A) In a civil action brought against * * * an employee of a political subdivision to recover damages for injury * * * caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

" * * * the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code."

The court must first determine whether the plaintiff, on the date in question, was acting as a governmental employee engaged in a governmental or proprietary function. See *Lightning Rod Mut. Ins. Co. v. Chatman* (1990), 64 Ohio App.3d 781, 582 N.E.2d 1122; see, also, *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 590 N.E.2d 832.

R.C. 2744.01(B) defines a "governmental employee" as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of his employment for a political subdivision."

A review of the evidence establishes that there is no dispute that plaintiff Baum was a volunteer fireman, or that on the date in question he was responding to a fire call.

■ The question for the court is whether a volunteer fireman is a governmental employee. Construing the definition of "employee" as is set forth in R.C. 2744.01(B), it is clear that the plaintiff was a governmental employee. See, also, *Dougherty v. Torrence* (1982), 2 Ohio St.3d 69, 2 OBR 625, 442 N.E.2d 1295 (Supreme Court held, interpreting former R.C. 701.02, that a volunteer fireman was ostensibly entitled to immunity.).

■ Next, the court must determine whether responding to a fire call amounts to a governmental function.

R.C. 2744.01(C)(1) defines a "governmental function" as "a function of a political subdivision that * * * satisfies any of the following:

"(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

"(b) A function that is for the common good of all citizens of the state;

"(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons[.]"

Obviously, a volunteer fireman cannot aid in the control or extinguishing of a fire unless he is able to travel to the site. Responding to a fire call is generally considered part of a volunteer fireman's duties. See *Held v. Rocky River* (1986), 34 Ohio App.3d 35, 516 N.E.2d 1272. Moreover, R.C. 2744.02(B)(1)(b) provides immunity for a member of a municipal corporation fire department when he or she proceeds toward a place where a fire is in progress or is believed to be in progress.

Therefore, the court finds that the plaintiff's actions, constituting responding to a fire call, were a governmental function.

However, defendant contends that because the plaintiff's vehicle was not equipped with a siren, he is not entitled to immunity. Defendant argues that the plaintiff was operating a vehicle which must be equipped with a siren, whistle, or bell capable of emitting sound audible under normal conditions from a distance of not less than five hundred feet, as required by R.C. 4513.21. Plaintiff admits that his vehicle was equipped with a light on his dashboard, but not a siren. A review of R.C. 4513.21 shows that "emergency vehicles" as defined by R.C. 4511.01(D) are required to be equipped with a siren, whistle, or bell as set forth under R.C. 4513.21. "Emergency vehicle" is defined under R.C. 4511.01(D) as an emergency vehicle of a municipal, township, or county department. More specifically, R.C. 4511.01(E)(4) defines vehicles used by fire departments, including motor vehicles when used by a volunteer fireman responding to an emergency call in the fire department service, as "public safety vehicles."

Given that the General Assembly has specifically distinguished between "emergency vehicles" and "public safety vehicles," the court must find that such distinction was intended to exclude those vehicles driven by volunteer firemen from the definition of "emergency vehicles." Thus, a public safety vehicle need not comply with the requirements of R.C. 4513.21. Therefore, the defendant's first argument is without merit.

For the reasons stated above, defendant's second argument that the plaintiff was acting outside the scope of his employment is also found not well taken.

Defendant's third argument that the plaintiff's failure to equip his vehicle with a warning device constitutes willful, wanton, and reckless conduct warrants an examination by this court.

Defendant claims that the lack of equipment and the manner in which plaintiff was proceeding to the fire indicates that he was operating his vehicle with a wanton or reckless disregard for safety of persons or property.

This precise issue with regard to firemen has not been addressed by the courts of this state. However, the issue has been addressed by the courts of Ohio with respect to the actions of police officers responding to emergency calls. In the case of *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063, the Supreme Court of Ohio held that an officer of the State Highway Patrol who inflicts injury upon an individual while the officer is operating a motor vehicle during an "emergency call" is generally immune from liability if the injury is a result of the officer's negligence. *York* at 145, 573 N.E.2d at 1065. However, the court went on to hold that if the officer operated his vehicle in a wanton or willful manner, immunity would not lie. *York* at 145, 573 N.E.2d at 1065. In *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 528 N.E.2d 578, the Court of Appeals for Montgomery County held that under former R.C. 701.02, municipalities were immune from liability for the negligence of their police officers who operate motor vehicles while responding to emergency calls. The court again further indicated that such municipalities were not immune for the willful or wanton misconduct of officers on emergency calls. Specifically, the court held that the use of lights and the siren bar by a police officer on emergency calls is a significant, but not controlling, factor in the issue whether the officer acted in a willful or wanton manner. This was one factor to be considered in conjunction with all the available circumstances. See *Reynolds* at 127, 528 N.E.2d at 582. See, also, *Horton v. Dayton* (1988), 53 Ohio App.3d 68, 558 N.E.2d 79.

To determine whether the plaintiff acted in a willful and wanton manner, it is incumbent upon the court to examine all the evidence and existing law to determine whether the plaintiff's conduct amounted to simple negligence or something more.

In *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 605 N.E.2d 445, the court of appeals, in the context of sovereign immunity, held that the terms "wanton," "willful," and "reckless," as used to describe tortious conduct, might be best defined as points on a continuum between negligence, which conveys the idea of inadvertence, and intentional misconduct. *Brockman* at 515, 605 N.E.2d at 449–50.

"Wanton misconduct," as defined by the Ohio Supreme Court, is a failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and known to the tortfeasor. See *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652.

Willful misconduct is something more than negligence and involves a more positive mental state prompting the injurious act than does wanton misconduct. *Brockman* at 515, 605 N.E.2d at 449–50. The Ohio Supreme Court has defined

8

"willful misconduct" as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Tighe v. Diamond* (1948), 149 Ohio St. 520, 527, 37 O.O. 243, 246, 80 N.E.2d 122, 127.

Moreover, the Ohio Supreme Court in *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, defined "reckless misconduct" in the following manner:

" 'The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Thompson* at 104–105, 559 N.E.2d at 708, quoting 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500.

The facts of this case disclose that there is no evidence that the plaintiff exceeded any posted speed limit; however, he may have traveled unreasonably fast for the conditions of the roadway. Plaintiff did have his red light activated on his dashboard at the time of the incident and was traveling within his own lane of travel. Defendant further characterized this incident as "not hugely impactive," which would support plaintiff's contention that he was not traveling at an excessive rate of speed.

Applying these definitions to the plaintiff's conduct, the court comes to the conclusion that the plaintiff's actions were neither willful, wanton, nor reckless, although arguably negligent. Therefore, in construing the evidence most favorably to the defendants for purpose of this motion, this court finds that there are no genuine issues of fact, that as a matter of law the plaintiff acted as a governmental employee engaged in a governmental function, and that his actions were neither willful, wanton, nor reckless. Therefore, such, plaintiff may not be found liable for his conduct.

### DEFENDANT SCHILLING'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF BAUM

Defendant Schilling also has moved for summary judgment against the plaintiff for the reason that he alleges the negligence of plaintiff Baum exceeds that of Schilling, and pursuant to Ohio's comparative negligence law, he is entitled to summary judgment. See R.C. 2315.19. Basically, the defendant alleges that the plaintiff acted in violation of R.C. 4511.21(A), the assured-clear-distance rule, which holds in pertinent part:

"No person shall operate a motor vehicle * * * at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

This statute mandates that " 'a driver is prohibited from operating any motor vehicle * * * at a rate of speed greater than will permit him to bring it to a stop within the distance at which he can see a discernible object obstructing his path.' " *Sabo v. Helsel* (1983), 4 Ohio St.3d 70, 71, 4 OBR 158, 160, 446 N.E.2d 457, 459, quoting *Gumley v. Cowman* (1934), 129 Ohio St. 36, 1 O.O. 318, 193 N.E. 627, paragraph two of the syllabus.

The Ohio Supreme Court has repeatedly ruled that a violation of this statute constitutes negligence *per se.* See, *e.g., Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. Specifically, the Supreme Court has held that a violation of R.C. 4511.21 and a finding of negligence *per se* depend upon whether there is evidence that the driver collided with an object that (1) was ahead of him in his path of travel, (2) was stationary and moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible. See *Tomlinson v. Cincinnati* (1983), 4 Ohio St.3d 66, 4 OBR 155, 446 N.E.2d 454. If, from a review of the evidence, there is no conflicting evidence as to any one of the elements necessary to constitute a violation of the statute, summary judgment would lie. Any conflict in such evidence creates a question for the jury. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. A review of plaintiff Baum's deposition indicates that he estimated the visibility on State Route 37 on this evening of a half to three-quarters of a mile. He further stated, however, that he did not see the Schilling vehicle until he was about a hundred yards away. He honestly admitted that there were other distractions on the road. These statements, together with all the other evidence, clearly indicate that there is no conflicting evidence as to the issue of discernibility or any other requirements for a finding of negligence *per se.* See *Tomlinson v. Cincinnati, supra.* Wherefore, this court finds as a matter of law that plaintiff Baum violated R.C. 4511.21(A), constituting negligence *per se.*

The final issue for the court is to determine whether the conduct of the defendant constitutes negligence and, if so, does his negligence exceed that of the plaintiff. To make such a determination, the court must examine the defendant's driving to see whether he violated any traffic laws or otherwise operated his vehicle in a negligent fashion.

Defendant clearly acknowledges that he stopped his vehicle near or at the intersection of County Road 180 and State Route 37 to come to the aid of another motorist. The exact location of his vehicle is not clear. The defendant admits that he attempted to back his vehicle, but upon seeing the plaintiff's vehicle approaching, he attempted to move forward but could not do so because of icy road conditions. R.C. 4511.38 states:

"No person shall start a vehicle until such movement can be made with reasonable safety and before backing the person shall give ample warning and exercise vigilance not to injure others."

█ A violation of the statute constitutes negligence *per se*. See *Buckeye Stages, Inc. v. Bowers* (1935), 129 Ohio St. 412, 2 O.O. 401, 195 N.E. 859.

█ The crucial factor here is whether Schilling's actions meet the ample-warning and the exercise-of-vigilance requirements of R.C. 4511.38. The term "ample warning" is defined as a warning fully sufficient to apprise those entitled thereto of backward movement of an automobile in order to discharge the duty of reasonable care. See *City Ice & Fuel Co. v. Center* (1936), 54 Ohio App. 116, 7 O.O. 434, 6 N.E.2d 580. Defendant stated in his deposition that he checked his rearview mirror and had his lights on, including his backup lights, and saw no one for at least a quarter mile. He further indicated that he was on a straight, level portion of the roadway. It is significant to note that the defendant specifically states that he did not physically turn around to look, and there is no mention of whether any warning flashers or turn signals were activated. Whether the use of flashing lights, turn signals, and a greater attempt to discern oncoming objects is a requirement to exercise vigilance is unclear.

It was recently held that a truck driver who had his four-way flashing lights, turn signals, and lights alongside his cab and trailer activated, and looked in either direction along the roadway, exercised adequate warning and vigilance to comply with R.C. 4511.38. See *State v. Chumley* (Nov. 5, 1990), Preble App. No. CA90–05–011, unreported, 1990 WL 170679. While the defendant gave some warning and exercised some vigilance, a question exists whether these acts rise to the level of that conduct required by R.C. 4511.38. This question remains unresolved and may not be disposed of by way of summary judgment.

█ Further, R.C. 4511.68(C) prohibits the parking of a vehicle within an intersection. The evidence must clearly establish that the vehicle or some part thereof be within the boundaries of an intersection in order for its driver to be found guilty of R.C. 4511.68(C). See *Campbell v. Daniels Motor Freight, Inc.* (1966), 8 Ohio App.2d 244, 37 O.O.2d 240, 221 N.E.2d 470. Schilling stated in his deposition that he began to enter the intersection, then stopped. However, the deposition remains unclear whether the vehicle was in the intersection. Plaintiff Baum's deposition makes no allegation whether the vehicle was in the intersection. Without any other evidence, the court cannot find, as a matter of law, that the defendant's vehicle was within the intersection to constitute a violation of R.C. 4511.68(C). Accordingly, whether the defendant has violated R.C. 4511.68 is a question best suited for determination by the trier of fact.

■ Finally, it could be argued that the defendant's actions constitute a violation of R.C. 4511.66, parking on a highway. R.C. 4511.66 provides:

"Upon any highway outside a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. * * * "

The key phrase of this statute is whether it is "practicable" to stop, park, or leave such vehicle off the paved or main traveled portion of the highway. From the depositions, it appears the roads were snow covered and that ice and snow had accumulated along the sides of the roadway. Conceivably, it was not practicable for the defendant to move his car off the roadway; however, this point is not made clear from the depositions. The court cannot come to the conclusion that the defendant has definitely violated R.C. 4511.66. All such doubts must be resolved in favor of the nonmoving party. See *Osborne v. Lyles, supra.*

The court finds, in construing all the evidence most strongly in favor of the plaintiff, that reasonable minds could reach different conclusions whether the defendant was negligent in the operation of his motor vehicle. Based upon the foregoing arguments, the court finds that defendant's motion for summary judgment is granted in part and overruled in part, in that the court finds that as a matter of law the plaintiff was negligent *per se* in the operation of his motor vehicle. However, the court further finds that reasonable minds cannot come to the conclusion that the defendant was negligent in the operation of his motor vehicle. Thus, it is impossible for this court to apportion the parties' relative negligence as required by R.C. 2315.19. Wherefore, this issue of the defendant's negligent operation of a motor vehicle and comparative negligence of both parties must be left for the trier of fact.

Plaintiff to prepare the appropriate entry.

Costs reserved.

Upon the filing of the above-mentioned entry, this matter to be set for final pretrial with the court.

*Judgment accordingly.*