[Cite as *Allen v. Lewis*, 2026-Ohio-2155.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Damarion Allen et al., | : | |
| Plaintiffs-Appellees, | : | Nos. 25AP-381 and 25AP-383 |
| v. | : | (C.P.C. No. 23CV-6202) |
| Latashia D. Lewis et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on June 9, 2026

**On brief:** *Cooper Elliott, Rex H. Elliott, Barton R. Keyes, Kaela King*, and *Abigail F. Chin*, for appellees. **Argued:** *Kaela King*.

**On brief:** *Teetor Westfall, LLC, Andrew N. Yosowitz*, and *Sarah A. Lodge*, for appellant, Talia Sumney. **Argued:** *Andrew N. Yosowitz*.

**On brief:** *Freeman, Mathis & Gary, LLP, Paul-Michael LaFayette*, and *Cara M. Wright*, for appellant, Latashia D. Lewis.

APPEALS from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Defendants-appellants, Latashia D. Lewis and Talia Sumney, appeal from a judgment of the Franklin County Court of Common Pleas denying their motions for summary judgment as to the claims filed against them by plaintiffs-appellees, Damarion Allen and Mary Washington. For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}   This matter arises from an incident on May 7, 2023, at the Franklin County Juvenile Intervention Center ("FCJIC") that resulted in significant injury, including paralysis, to Allen, who was a juvenile resident at the facility.  On that date, Allen and another juvenile resident, T.L., engaged in a fight, and Lewis, a juvenile intervention specialist, and Sumney, a shift supervisor, responded to the fight.  Allen and T.L. were physically separated, and Allen was dragged to his room nearby.  A nurse and other medical personnel were summoned to care for Allen who was unable to move his torso and legs, resulting in his transport to a nearby hospital.

{¶ 3}   In August 2023, Allen and Washington (Allen's mother) filed suit against Lewis and Sumney for reckless, willful, or wanton breach of duty, and for loss of consortium.  After the parties engaged in discovery, Lewis and Sumney separately moved for summary judgment.  They argued, among other things, that, as political subdivision employees, they were entitled to immunity under R.C. 2744.03 for their actions related to the incident on May 7, 2023, at FCJIC.  In April 2025, the trial court denied their summary judgment motions.

{¶ 4}   Lewis and Sumney each timely appeal.

## II.  Assignments of Error

{¶ 5}   Sumney assigns the following two assignments of error for our review:

> [I.] The burden of proof to show that a public employee is not entitled to immunity is on the plaintiff. The trial court erred when it placed the burden of proof for proving statutory immunity on Defendants-Appell[ants].

> [II.] The trial court erred when it denied statutory immunity to Appellant Talia Sumney.

{¶ 6}   Lewis assigns the following sole assignment of error for our review:

> The trial court erred in denying summary judgment to Defendant Latishia Lewis.

## III.  Discussion

{¶ 7}   Because they involve interrelated issues, we address Sumney's two assignments of error and Lewis' sole assignment of error together. Sumney's first assignment of error alleges the trial court erred in placing the burden of proving statutory

immunity on her. In her second assignment of error, Sumney contends the court erred in denying her statutory immunity. Sumney generally challenges the court's denial of her summary judgment motion. Lewis' sole assignment of error alleges the court erred in denying her summary judgment motion. In support of her assignment of error, Lewis argues the court erred in placing the burden on her to prove that an exception to statutory immunity does not apply, that the court erred in concluding there remains genuine issues of material fact concerning her statutory immunity, that there is no evidence that she proximately caused any injury to Allen, and that Allen's claims are barred by the doctrine of primary assumption of risk. These assignments of error are not well-taken.

{¶ 8} Before we review the merits of Sumney and Lewis' challenges to the trial court's denial of their summary judgment motions, we address this court's jurisdiction. Pursuant to the Ohio Constitution, Article IV, Section 3(B)(2), appellate courts' jurisdiction extends only to the review of final, appealable orders. Without a final, appealable order, an appellate court has no jurisdiction. *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 9. Ordinarily, a trial court's denial of a motion for summary judgment is not a final, appealable order. *Stevens v. Maxson*, 2013-Ohio-5792, ¶ 8 (10th Dist.). However, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Thus, because the court's denial of Sumney and Lewis' summary judgment motions also denies them the benefit of statutory immunity, it is a final, appealable order, and we have jurisdiction.

{¶ 9} An appellate court reviews summary judgment under the de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.). De novo review means the reviewing court independently analyzes the record while giving no deference to the trial court's decision. *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-Ohio-2100, ¶ 13 (10th Dist.). Thus, we review de novo the trial court's denial of the summary judgment motions filed by Sumney and Lewis.

{¶ 10} Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment

is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 1997-Ohio-221.

{¶ 11} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 1996-Ohio-107. However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. *Id.*; *Vahila v. Hall*, 1997-Ohio-259. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at ¶ 17; *Vahila* at ¶ 19; Civ.R. 56(E).

{¶ 12} Allen and Washington sued Sumney and Lewis for their actions as political subdivision employees on May 7, 2023, at FCJIC, and Sumney and Lewis assert they are entitled to statutory immunity for those actions. R.C. Chapter 2744 outlines the statutory scheme for tort liability for political subdivisions, including cities, and its employees. Pursuant to R.C. 2744.03(A)(6), employees of a political subdivision are entitled to immunity unless an exception applies. As pertinent here, under R.C. 2744.03(A)(6)(b), an employee is not entitled to immunity if his or her "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Malicious purpose is defined as " 'a willful and intentional design to do injury, or the intention or desire to harm another, through conduct which is unlawful or unjustified.' " *Cooper v. Tommy's Pizza*, 2010-Ohio-2978, ¶ 9 (10th Dist.), quoting *Johari v. Columbus Police Dept.*, 186 F. Supp.2d 821, 831 (S.D. Ohio 2002). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 2012-Ohio-5711, paragraph three of the syllabus. Conduct is reckless in nature if it is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. *See O'Toole v. Denihan*, 2008-Ohio-2574, paragraph three of the syllabus

("Recklessness is a perverse disregard of a known risk. . . . The actor must be conscious that his conduct will in all probability result in injury."). "These are rigorous standards that will in most circumstances be difficult to establish." *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 8. Each employee's "conduct is typically analyzed separately when determining whether immunity applies." *Morrison v. Horseshoe Casino*, 2020-Ohio-4131, ¶ 75 (8th Dist.).

{¶ 13} Before analyzing whether genuine issues of material fact exist, we address an argument both Sumney and Lewis make regarding the burden of proof as to statutory immunity. They argue the trial court erred in placing the burden on them to prove that the exception to statutory immunity set forth in R.C. 2744.03(A)(6)(b) does not apply to their conduct. As to this argument, Allen and Washington acknowledge the court's decision contains language that, albeit erroneous, seems to indicate that Sumney and Lewis had the burden of proving they did not engage in conduct exempt from immunity. Namely, although the court noted that Allen and Washington must establish an exception to immunity for Sumney and Lewis, it then stated, "Next, [Sumney and Lewis] must show they are entitled to immunity and that they did not act with malicious purpose, in bad faith or in a wanton or reckless manner." (Apr. 2, 2025 Decision & Entry at 5.) In moving for summary judgment, Sumney and Lewis had the burden of identifying those portions of the record demonstrating the absence of a material fact concerning their statutory immunity. They did not, however, have the burden to bring affirmative evidence showing that an exception to their statutory immunity does not apply. Thus, insofar as the trial court indicated they had this burden, it erred. Regardless, Sumney and Lewis' argument is unpersuasive because this court's review of summary judgment is de novo, making any such error harmless. *See, e.g.*, *Horton v. Dayton*, 53 Ohio App.3d 68 (2d Dist. 1988) ("[E]ven if the trial court applied an incorrect standard in deciding [the defendant's] motion for summary judgment, that error would be harmless because this court . . . is obliged to determine, as a matter of law, whether summary judgment was proper, applying the correct standard under Civ.R. 56.").

{¶ 14} In reviewing the record for the existence of genuine issues of material fact, we first address evidence relevant to Sumney's statutory immunity. Sumney's deposition and affidavit testimony indicated the following. On May 7, 2023, Sumney was working at FCJIC as the shift supervisor for Unit 1, which has four pods—A, B, C, and D—housing

juveniles.    She informed other staff that Allen, a Unit 1C resident, was in medical isolation and should not leave his room with any other resident.  At approximately 7:16 p.m. that day, Sumney was in her office with a juvenile who was making a telephone call. Approximately one minute later, she heard a "Code 44," or call for assistance, from Lewis, a juvenile intervention specialist, in Unit 1C.  (Sumney Aff. at 3.)  Within 30 seconds, Sumney was in Unit 1C to help with the situation.

{¶ 15}  Because Sumney arrived in Unit 1C after the altercation ended, she did not see Allen hit his head on the floor.  Carrying a handheld video camera, Sumney observed juvenile intervention specialist, Gabriella Camp, restraining juvenile T.L., and Lewis was "trying to pick up" Allen.  (Sumney Aff. at 3-4.)  The agency protocol for this type of altercation scenario is to separate the juveniles and get them back to their rooms. Additionally, when Sumney began working at FCJIC, she received first-aid training, including how to respond to potential head, neck, and spine injuries.  Sumney understood from her first-aid training that if a head, neck, or spine injury is suspected, the individual should be immobilized, with particular attention given to stabilizing the head.   In approaching Allen, Sumney "did not see any obvious sign of injury," and no one indicated to her that he was injured. (Sumney Aff. at 4.)  Consequently, Sumney directed Allen to get up, but he did not respond, which Sumney construed as non-compliance.  Sumney directed juvenile intervention specialist, Luke Edo, to take Allen to his room.

{¶ 16}  As Edo and Lewis initially picked up Allen, Allen "smiled" at Sumney, which was consistent with her belief that he was being non-compliant "dead weight," a common juvenile resistance tactic.  Edo asked Allen "you can't walk?" and Sumney stated he could walk, but that he was being non-compliant.  (Sumney Aff. at 4, 5.)  With the commotion and the alarm going off, the situation was hectic and loud, and, prior to Allen being placed in his room, Sumney did not hear Allen say that he was injured or make any reference to his neck.  She only heard him say "place me on my back."  (Sumney Aff. at 5.)  After Allen was placed in his room and positioned pursuant to protocol (on his knees facing his bed with his hands crossed behind his head and his ankles crossed), Sumney observed that he did not move from this position when allowed, and she asked him what was wrong.  Allen replied that he could not move, and he again asked to be placed on his back.  Sumney physically turned Allen onto his back, and she placed her left foot under his head.  A nurse

arrived and took over Allen's care. Paramedics were called, and Allen was transported to the hospital.

{¶ 17} The video recording from the camera held by Sumney in Unit 1C after the altercation is generally consistent with her testimony, except as to at least one relevant circumstance. In the video, Allen is seen being pulled toward his room, then temporarily positioned outside it, waiting for the room to be prepped at Sumney's direction. As they waited, Allen can be heard twice saying in distress, "my neck," and he requested to be placed on his back. (Ex. L.) Immediately in response, Sumney said, "No. Get him in his room. No matter what it takes. We need use of force. We are not putting you on your back." (Ex. L.) Allen is then seen being pulled into his room by his arms and positioned with his lower body prone on the ground and his upper body propped up against the elevated bed platform with his torso approaching a perpendicular angle to the ground. Additionally, at his deposition, Allen testified that he said to those ordering him to get off the floor, including Sumney, that he could not move, but Sumney continued to have Lewis lift him from the floor and drag him toward his room.

{¶ 18} An FCJIC security video in Unit 1C recorded the altercation and subsequent conduct in the common area. The video shows Allen attacking L.T., lifting L.T. in the air, and then falling forward, hitting his head on the floor. Lewis was in the Unit 1C common area, primarily supervising Allen, when Allen attacked L.T.; she immediately approached the two and radioed for help. As Allen lay on his stomach, Lewis pulled a standing L.T. away from him, but L.T. was able to kick Allen twice before being completely separated. On the ground, Allen moved his head and arms, but he showed no movement in his torso or legs. Once Allen and L.T. were separated, Lewis is seen pulling Allen up from under his armpits and then turning him over to his backside. Upon Sumney's arrival, Lewis, with Edo's assistance, pulled the limp Allen down several steps from the upper landing area and toward his nearby room. In this process, Lewis appears to release her grip on Allen, and he collapses halfway down the steps to the ground, with Edo holding onto one of his arms. After being temporarily positioned outside his room for approximately a minute, Allen was pulled into his room and out of view of the security camera.

{¶ 19} In view of this evidence, a factfinder could reasonably find that Sumney perversely disregarded a known risk of further injuring Allen. Although Sumney did not

witness the altercation and Allen striking his head on the floor, construing the evidence in favor of Allen and Washington, she obtained information soon thereafter indicating that he physically could not move himself off the floor. Sumney asserts that she construed Allen's response to her instructions to get off the floor as non-compliance, and that he was purposely "dead weight." But the evidence also could be construed as demonstrating that Sumney became aware, soon after entering Unit 1C in response to the call for help, that Allen was unable to move his torso and legs, and that despite this circumstance and Sumney's first-aid training to immobilize someone with a suspected head, neck, or spine injury, she continued to order employees to drag the limp Allen to his room. Further, in the video recorded by Sumney, when Allen was temporarily positioned outside his room, he can be heard complaining at least twice about his neck. Even so, Sumney ordered other employees to move Allen into the room, using whatever force necessary. And once Allen was in his room, propped up against his bed, Sumney asked him directly what was wrong, and he said he could not move. Despite this, she turned him over from his knees and onto his back. Construing this evidence most favorably to Allen and Washington, there remains a genuine factual dispute as to whether these actions are reckless.

{¶ 20} Similarly, the evidence submitted reasonably demonstrated that Lewis acted recklessly. The security camera video can be construed as showing that Lewis personally witnessed the altercation between Allen and L.T., including Allen's head striking the ground. Lewis argues that the video conclusively shows she did not see Allen strike his head because she was looking at, and using, her radio to call for assistance. We disagree. Lewis was facing and approaching the two juveniles with her back to the camera when Allen struck his head on the floor. Thus, although precisely what Lewis was looking at when Allen struck his head is not conclusively established by that evidence, she was positioned in a manner to personally witness the strike. And, as set forth above, immediately after Allen and L.T. were separated, Lewis attended to Allen, who was face down on the floor, checked to see if he was okay, and turned him over onto his back. When asked at her deposition why she turned Allen over, Lewis stated, "I was checking to see if he was okay and making sure he, you know, didn't bump and hurt his head, or if he was bleeding or, you know, any of that sort." (June 13, 2024 Tr. at 134.) She further testified that she did not believe he was injured because he did not indicate that he was hurt. But Lewis acknowledged she received first-

aid training when she began her employment at FCJIC, which included training on how to respond to head, neck, and spine injuries, and that she learned not to move someone with a suspected injury of this type. As discussed above, evidence in the record indicated that Allen, in response to orders to get up, told Lewis and others that he could not comply. These circumstances, combined with evidence that Lewis witnessed Allen striking his head on the floor and Allen showing no movement in his torso and legs after that impact, could reasonably support a finding that Lewis acted recklessly in turning over and dragging the limp Allen toward his room. Therefore, construing the evidence most favorably to Allen and Washington, there remains a genuine factual dispute as to whether Lewis acted recklessly.

{¶ 21} Because a factfinder could reasonably find, based on evidence submitted, that Sumney and Lewis acted recklessly, we agree with the trial court's conclusion that there remain genuine issues of material fact as to the statutory immunity of Sumney and Lewis. Therefore, we conclude the court did not err in denying Sumney and Lewis' summary judgment motions insofar as Sumney and Lewis asserted statutory immunity as a defense.

{¶ 22} In addition to challenging the trial court's conclusion on whether genuine issues of material fact exist regarding her statutory immunity, Lewis argues the court erred in two additional respects: (1) by failing to determine that she did not proximately cause any injury to Allen, and (2) by not finding that Allen's claims are barred by the doctrine of primary assumption of risk. But, in this appeal, this court has no jurisdiction to review these issues. As discussed above, this court has jurisdiction to review the trial court's denial of summary judgment insofar as it denied Lewis the benefit of statutory immunity. This court lacks jurisdiction, however, to consider issues in the trial court's decision not related to statutory immunity, such as proximate cause and assumption of risk. *See Ohio Bur. of Workers' Comp. v. Shaffer*, 2013-Ohio-4570, ¶ 14 (10th Dist.) (limiting appellate review to portion of the trial court's decision addressing statutory immunity and therefore not considering statute of limitations defense). Thus, we do not consider, in this appeal, Lewis' arguments concerning proximate cause and assumption of risk.

{¶ 23} For these reasons, we overrule Sumney's first and second assignments of error and Lewis' sole assignment of error.

## IV.  Disposition

{¶ 24} Having overruled Sumney's two assignments of error and Lewis' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS, P.J., and JAMISON, J., concur.

————————————