Pisel et al., Appellees, v. ITT Continental Baking
Company et al., Appellants.

[Cite as Pisel v. Baking Co. (1980), 61 Ohio St. 2d 142.]

(No. 79-201—Decided February 6, 1980.)

Messrs. *Zidar, Morgan & Tolaro* and *Mr. Alfred J.
Tolaro,* for appellees.

Messrs. *Baran & Baran, Mr. Gregory G. Baran* and *Mr.
Edward C. Baran,* for appellants.

*Per Curiam.* Appellants' major challenge in the cause
at bar stems from the trial court's refusal to grant their mo-
tion for a directed verdict. Appellants argue that the trial
court erred when it submitted the instant cause to the jury on
the question of whether Brubaker's (hereinafter "appellant")
behavior amounted to wanton misconduct.

A perusal of the evidence in the manner required by Civ.
R. 50(A)(4) * demonstrates that on November 1, 1973, at

---

* Civ. R. 50(A)(4) provides:

"(A) Motion for directed verdict.***

"(4) When granted on the evidence. When a motion for a directed verdict has
been properly made, and the trial court, after construing the evidence most strongly
in favor of the party against whom the motion is directed, finds that upon any deter-

about 7:15 p.m., after darkness had descended, David Pisel (hereinafter "appellee") was operating his motorcycle westerly on U. S. Route 30 in Mansfield, Ohio. Route 30 is an unlighted four-lane highway separated by a concrete barrier. Appellee was traveling in the left lane, and was wearing a helmet with an amber-tinted face mask. Appellee testified that the mask had the effect of "darkening" lights when he wore it at night. His speed was approximately 50 miles per hour and his lights were on. As appellee approached his intended exit, he glanced backward over his shoulder in order to move into the right lane. He was unable, however, to change lanes due to the traffic in that lane. When he again focused his vision forward, appellee observed a truck resting sideways in his lane. Unable to stop in time, appellee crashed into the truck and sustained injuries which resulted in the amputation of his left leg.

During trial, the evidence demonstrated that approximately ten to fifteen minutes prior to appellee's collision, appellant's truck had been involved in an accident with an automobile. Although the truck was operable, appellant did not remove it from the westbound, left lane of travel. Both vehicles were left in the highway until the police could arrive to prepare an accident report. After the collision, however, the truck's headlights, taillights, and clearance lights were left on by appellant. When a witness arrived at the scene, appellant requested that the police be summoned. While awaiting arrival of the authorities, appellant remained with the vehicles and began to direct the flow of traffic around the wreckage. The evidence is in dispute with respect to whether appellant was using a flashlight to direct other travelers as appellee arrived at the scene. When appellant observed appellee's motorcycle approaching, he began waiving his arms in an attempt to warn him of the obstruction.

"Wanton misconduct" has most recently been discussed by this court in *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, 363 N.E. 2d 367, wherein the syllabus states:

"Where the driver of an automobile fails to exercise *any*

minative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

*care whatsoever* toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct.\*\*\*" (Emphasis added.)

Applying this rule to the facts at bar, it is clear that appellant's actions did not amount to "wanton misconduct." The defendant in *Hawkins* failed to exercise any care whatsoever. In the instant cause, appellant acted to protect other motorists from the potential danger of the blocked thoroughfare. *Baab* v. *Shockling* (1980), 61 Ohio St. 2d 55, 399 N. E. 2d 87.

The judgment of the Court of Appeals is reversed and final judgment is entered for appellants.

*Judgment reversed.*

HERBERT, LOCHER and HOLMES, JJ., concur.

P. BROWN, J., concurs in the judgment.

CELEBREZZE, C. J., W. BROWN and LYNCH, JJ., dissent.

LYNCH, J., of the Seventh Appellate District, sitting for SWEENEY, J.

WILLIAM B. BROWN, J., dissenting. In the instant cause, the majority does not merely apply *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114. Rather, it sanctions a somewhat different approach to the issue of wanton misconduct with which I disagree. In *Hawkins,* we held that where the probability of harm was great, a tortfeasor's complete failure "to exercise any care whatsoever" constituted wanton misconduct, entitling a *plaintiff* to a directed verdict. Here, the majority reads *Hawkins* to imply that a similar *tortfeasor* is himself entitled to a directed verdict where such a complete failure to exercise any care is absent.

I agree with *Hawkins* insofar as it establishes that an appropriate demonstration of a tortfeasor's complete failure to exercise any care is sufficient to direct a verdict for a plaintiff on the issue of wanton misconduct. I do not agree with the majority that a plaintiff should be required to offer evidence tending to show a tortfeasor's *complete* failure to exercise any care in order to survive a tortfeasor's motion for a directed verdict. In the majority's view, a tortfeasor need on-

ly show that he lifted a finger in order for his motion for a directed verdict to be granted. Surely, the issue of wanton misconduct cannot be determined without considering the precise interests compromised by the tortfeasor's conduct.

Moreover, the approach that the majority adopts makes it virtually impossible for a plaintiff to prevail on this issue. Contributory negligence has thus become, in effect, a defense to "wanton" misconduct, as well as to negligence. It should not be so easy for tortfeasors to escape liability.

CELEBREZZE, C. J., and LYNCH, J., concur in the foregoing dissenting opinion.

LYNCH, J., dissenting. The majority opinion's decision is based on the sole question of whether the behavior of defendant Brubaker amounted to wanton misconduct. The trial court properly charged the jury on wanton misconduct, pursuant to *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, but it also gave the following charge on wilful misconduct:

"Wilful misconduct is intentionally doing that which is wrong or intentionally failing to do that which should be done. The circumstances must also disclose that the defendant knew or should have known that such conduct would probably cause injury to the plaintiff. Wilful misconduct implies an intentional disregard of a clear duty or of a definite rule of conduct; a purpose not to discharge such duty, or a purpose to perform wrongful acts with knowledge of the likelihood of resulting injury. It is purposeful action or purposeful failure to act as differentiated from neglect to act."

Defense counsel made no objection to the trial court's charge on wilful misconduct; therefore, it is the law governing this question in this case.

A construction of the evidence adduced at trial most strongly in plaintiffs' favor, pursuant to Civ. R. 50(A)(4), shows that the subject accident occurred at approximately 7:15 P.M. on November 1, 1973, after darkness had descended, on U. S. Route 30 in Mansfield, Ohio, which was an unlighted limited access, divided four-lane highway; that ten to fifteen minutes prior to subject accident, defendants' truck had been involved in a minor accident with an automobile and was operable; that, during this time, defendants' truck was

left parked sideways across the left passing lane of such highway in violation of R. C. 4511.68(P); that although the lights on defendants' truck were left on, they were not discernible to approaching traffic because such lights were directed away from approaching traffic because of the position of defendants' truck on such highway; that defendants' truck was not equipped with either flares, reflectors or fusees in violation of R. C. 4513.27; that defendant Brubaker did not place either lighted fusees, red electric lanterns or red reflectors at the traffic side of his vehicle, and at a distance of 40 paces or approximately 100 feet from his vehicle on the traffic side in violation of R. C. 4513.28; that defendant Brubaker did not exhibit a white or amber light on the roadway side that was visible from a distance of 500 feet to the front of his vehicle and a red light visible 500 feet to the rear, in violation of R. C. 4513.10; that when defendant Brubaker saw plaintiff's motorcycle approaching, he began waiving his arms in an attempt to warn plaintiff of the obstruction in the highway caused by his truck; that defendant Brubaker was so close to his truck while doing this that plaintiff saw defendants' truck before he saw Brubaker; that plaintiff's speed was approximately 50 miles per hour and his lights were on; that when plaintiff saw defendants' truck, he was unable to stop in time and crashed into the truck; and that plaintiff sustained injuries which resulted in the amputation of his left leg. ˙

This court has held that the leaving of a motor vehicle at night across or in the travel lane of a highway, where the driver thereof fails to exercise any care whatsoever to other users of the highway, is a reckless and inexcusable disregard of the rights of other motorists on such highway. *Hawkins* v. *Ivy, supra; Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320; *Reserve Trucking Co.* v. *Fairchild* (1934), 128 Ohio St. 519.

The majority opinion apparently attaches no significance to the fact that the subject accident occurred on a limited access highway. The writer believes that this fact is pertinent to the decision in this case.

A limited access highway is one especially designed for through traffic, over which abutters have no easement or right of access, so as to eliminate cross traffic of vehicles

(R. C. 5535.02, 4511.01[CC]). Access to such highway may be allowed only at highway intersections designated by the Director of Transportation (R. C. 5511.02). Pedestrians, except in emergency situations, and slow vehicles are prohibited within the limits of a freeway (R. C. 4511.051). Except for some specific exceptions which are not applicable to this case, no person shall park a vehicle on the roadway portion of a freeway, expressway or thruway (R. C. 4511.68[P]).

A limited access highway is designed and constructed at a considerable cost to the general public so that reasonably prudent drivers on such highways can drive at a higher rate of speed than can be done on ordinary roads because of the elimination of cross traffic and of slow vehicles from such highways. This is a considerable advance in the technology of building roads from the two-lane roads that generally existed at the time this court decided *Smiley* v. *Arrow Spring Bed Co.* (1941), 138 Ohio St. 81. There are still many two-lane roads in Ohio, and the *Smiley* case is still valid law as applied to accidents arising on such highways. However, the effect of the *Smiley* case is to slow down traffic in anticipation of recognized traffic hazards. The design of limited access roads is intended to eliminate as many of the recognized traffic hazards as possible. The writer believes that a comparable advance in the technology of the law in its application to motor vehicle accidents on limited access highways requires a recognition of an inherent conflict with the legal principle enunciated in the *Smiley* case and the legislative intent of the applicable statutes to limited access highways.

Thus, the facts of cases involving motor vehicle accidents on limited access highways should be distinguished from the facts of the *Smiley* case. The writer's opinion is that a new principle of law applicable to such cases should be developed.

In the instant case, the trial court instructed the jury that plaintiff was negligent as a matter of law; that plaintiff's own negligence in the operation of his motorcycle was a direct cause of the subject accident, and that the only question before the jury was whether defendants were liable because of wilful and wanton misconduct of defendant Brubaker.

In this case, plaintiff was driving his motorcycle on a limited access road at a speed of approximately 50 miles per

hour, which was a lawful and reasonable rate of speed for this highway. Plaintiff had the right to assume that defendants would obey the laws and would either remove defendants' truck from its dangerous position on the highway or place warning lights of such brightness or at such a distance from the truck so as to adequately warn approaching motorists (such as plaintiff) of the obstruction in the highway caused by the truck being parked across such highway. In this case defendant Brubaker did not comply with such statutes, and did not warn plaintiff in sufficient time to enable plaintiff to stop his motorcycle at the speed at which he was traveling.

Although the issue is not before this court, the writer believes that there is a serious question of whether plaintiff's negligence was the proximate cause of such accident. Under the facts of this case, the writer's opinion is that the most probable cause of such accident was the action of defendant Brubaker in leaving his operable truck parked sideways across the passing lane of a limited access highway without complying with the statutory requirements of warning approaching traffic by visible lights. The writer concurs with Justice William B. Brown's dissent from the majority opinion on the application of *Hawkins* v. *Ivy, supra,* on the issue of wanton misconduct to the facts of this case. However, the writer further concludes that such actions of defendant Brubaker were grossly irresponsible and amounted to wilful misconduct.

Defendant Brubaker admitted that he knew that the position of his truck on an unlighted, limited access highway was dangerous and hazardous. In effect, he admitted that the position of his truck on such highway created a situation where there was a great probability that approaching traffic would run into his truck, resulting in serious personal injury, death or damage.

After his first accident, Brubaker had sufficient time to remove his truck from its dangerous position on the highway as he was required to do pursuant to R. C. 4511.68(P). Brubaker made the deliberate decision not to remove his truck from this highway but to await the arrival of the police whom a witness, who arrived at the scene, summoned on his C. B. radio. R. C. 4549.02 requires a person involved in an ac-

cident to stop at the scene of the accident and to supply certain information, but there is no statutory requirement that a motor vehicle involved in an accident remain in the same position until the police arrives. To do so is helpful for the police accident report and to the party involved in the accident, but in the instant case the leaving of defendants' truck parked across the passing lane of a limited access highway was not done with any consideration of the rights of approaching motorists.

When Brubaker made this decision not to remove his truck until the police arrived, he knew that he was on a limited access highway where drivers would drive at a greater speed than on ordinary roads; that his truck did not have either flares, reflectors or fusees as required by R. C. 4513.27 and that he could not comply with R. C. 4513.28.

His final and dangerous misconduct was his failure to comply with the statutory requirements to warn oncoming traffic of the obstruction of the highway by the presence of his truck on such highway. He had the choice to turn his truck so that the lights faced oncoming traffic, rather than being directed away from such traffic, or to walk down the highway with a flashlight or some other discernible light to a sufficient distance so as to warn oncoming traffic of such obstruction. It is to be noted that R. C. 4513.28 requires that lighted fusees, red electric lanterns or red reflectors be placed at a distance of 40 paces or approximately 100 feet from a disabled truck. This is the only statutory standard that has come to the writer's attention for this purpose.

The writer is aware that standing on a limited access highway waving a flashlight at night is hazardous to the person doing so for the same reason as leaving a truck parked across the travel lane of such highway. However, the statutes impose a duty on a person whose truck is parked on a travel lane of a limited access highway to either remove such vehicle or to adequately and timely warn other motorists approaching such vehicle of the presence of the obstruction on such highway caused by the parking of such truck on such highway.

The writer's conclusion is that the overwhelming motivation for the actions of defendant Brubaker was his concern to

protect the property interest of his employer, defendant ITT Continental Baking Company, rather than any actual care for approaching traffic. His decision to leave his operable truck parked across the travel lane of an unlighted limited access highway until the police arrived clearly supports this conclusion. Defendant Brubaker had time to talk to the driver of the automobile with whom he had the first accident to obtain information from her but he did not utilize the available ten to fifteen minutes to comply with the applicable statutes as to warning approaching traffic by placing lights of sufficient brightness or at a sufficient distance from his truck to allow approaching traffic to stop in time to avoid a collision with his truck. Instead, he stood in the vicinity of his truck. As plaintiff was approaching defendants' truck at a rate of speed at which he was unable to stop in time to prevent his crashing into the truck, defendant Brubaker waved his arms to attract plaintiff's attention to the obstruction caused by his truck on the highway. By that time plaintiff had already seen the obstruction and Brubaker's action in waving his arms was ineffectual in preventing the subject accident. The only effect of such action by Brubaker was that plaintiff turned his motorcycle to the right and hit the front bumper of defendants' truck instead of hitting such truck broadside, thus minimizing the damage to defendants' truck.

The number of highway accidents in Ohio resulting in serious personal injuries and death is a matter of general knowledge and concern. Regardless of what decisions courts make regarding highway accident cases, highway accident casualties will continue. However, judges play a role in shaping the law so as to exercise some control over highway accidents. This court enunciated the legal principle in the *Smiley* case in an effort to prevent accidents.

However, in the writer's opinion the strict application of the *Smiley* case to the facts of this case will cause more accidents rather than prevent them. In the writer's opinion the action of defendant Brubaker in leaving his operable truck on an unlighted limited access highway, when he had sufficient time to remove such truck, without complying with the applicable statutes as to placing warning lights directed to approaching traffic predictably would result in an accident such

as occurred in this case. The writer submits that the proper test is the question of what was the proximate cause of such accident. Under the present state of the law and under the facts of this case, the writer agrees with both the trial court and the Court of Appeals that the question of whether Brubaker's actions amounted to wilful and wanton misconduct was properly submitted to the jury.