**McGUIRE, Appellant,**

v.

**LOVELL et al., Appellees.**

[Cite as *McGuire v. Lovell* (1998), 128 Ohio App.3d 473.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–97–77.

Decided March 31, 1998.

474

*J.C. Ratliff,* for appellant.

*Day & Cook L.P.A., David L. Day and Douglas J. Segerman,* for appellees.

---

THOMAS F. BRYANT, Judge.

Appellant, Harold L. McGuire, appeals from a judgment of dismissal entered by the Court of Common Pleas of Marion County upon a motion for summary judgment filed by appellees, Deputy Brian L. Lovell, Marion County Sheriff John H. Butterworth and Marion County Commissioners.

McGuire brought a suit in negligence arising out of an auto collision between Deputy Lovell and the pickup truck in which McGuire was an occupant. On the afternoon of November 9, 1992, Deputy Lovell was off duty, but travelling to work, westbound along State Route 309 in Marion County. Lovell was driving his sheriff's cruiser, which he takes home over night. At some point on his way to work Deputy Lovell claims to have overheard a radio dispatch concerning a burglary in progress. Lovell states he radioed dispatch to advise that he was available to assist and continued his westbound route on SR 309.

It is uncontested that at approximately 3:15 p.m., Deputy Lovell drove through a red light on State Route 309 ("SR 309") and collided with a pickup truck at the intersection of Kensington/Madison Avenue and SR 309. The truck contained two occupants in addition to McGuire, Ray Willis, seated in the middle, and Jake Steed, the driver. The three young men were travelling north on Kensington and intended to cross the intersection of Kensington and SR 309 to northbound Madison Avenue. Northbound traffic had a green light as their truck approached the intersection. Upon entering the intersection, Deputy Lovell struck the right passenger door of the truck with the left front side of his sheriff cruiser. The impact caused the truck to flip over onto its top and slide across the intersection before coming to a rest.

McGuire, nearest to the point of impact, claims to have suffered a shoulder injury as a result of this collision. Appellees did not challenge this assertion in their motion for summary judgment. The appellees did claim, however, that they were not liable for McGuire's injuries as a matter of law based on political subdivision immunity as set forth in R.C. 2744.02. The trial court granted the appellees' motion for summary judgment, and McGuire now takes this appeal.

I

McGuire raises one assignment of error:

"The Trial Court erred in granting Appellee's [sic] motion for summary judgment when there existed a genuine issue as to material facts."

When reviewing summary judgment entered by a trial court, an appellate court conducts an independent review of the matters supporting the granting of the entry of summary judgment. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411, cause dismissed (1988), 39 Ohio St.3d 710, 534 N.E.2d 94. Summary judgment is available under Civ.R. 56(C) when the movant establishes the following: (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that

conclusion is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.

McGuire asserts a genuine issue of material fact exists as to whether appellees are entitled to immunity as a matter of law. Appellees argue they are immune from liability, as Deputy Lovell was responding to an "emergency call" as defined in R.C. 2744.01(A) and his misconduct, if any, was neither wanton or willful as set forth in R.C. 2744.02(B)(1)(a), nor reckless as set forth in R.C. 2744.03(A)(6)(b).

Political subdivisions are afforded limited immunity for the wrongful acts of their employees. As stated in R.C. 2744.02(A)(1):

"Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

The exception in division (B) states in pertinent part:

"(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. The following are full defenses to such liability:

"(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct * * * ."

A further limitation to the immunity granted to an employee of a political subdivision is found in R.C. 2744.03(A)(6), which states in part:

"In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:

" * * *

"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

McGuire first argues summary judgment was not proper, as a triable issue exists as to whether Deputy Lovell was responding to an emergency call to duty. We find this argument well taken. To avail oneself of the immunity protection afforded police agencies for the negligent operation of motor vehicles, the operator of the police vehicle must have been "responding to an emergency call." R.C. 2744.01(A).

An "emergency call" is defined as "a call to duty including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." *Id.*

Accordingly, Deputy Lovell, to have been responding to an emergency call, must have at least been called to duty. What may constitute a call to duty has been left broad by the legislature. However, clearly required is some type of "call to duty" that initiates an officer's response. *Id.*

■ At his deposition, Deputy Lovell stated that on the afternoon of November 9, 1992, he was travelling west in his sheriff's cruiser along SR 309. Lovell concedes he was off duty and merely on his way to work at that time. When asked if he was on duty when the accident occurred, Lovell responded, "I was called in or *I wasn't called in but I was responding to back up a unit.*" (Emphasis added.) Lovell later clarified this response by stating that while en route to work he overheard a dispatch on his police radio concerning a burglary was in progress and "I called and told them I was on the air * * * [and] * * * asked if they wanted me." Lovell did not state whether dispatch responded to his offer of assistance. After calling into dispatch, however, Lovell maintains, he then felt he was on duty and responding to an emergency call.

Appellees also point to the deposition of Mrs. Bard, who was driving a school van behind Deputy Lovell west on SR 309, in support of their contention that Lovell was responding to an emergency call. Appellees note that Bard testified she observed Deputy Lovell's emergency lights and heard his siren come on prior to the intersection of Kensington and SR 309. However, Bard's testimony, when viewed in a light most favorable to McGuire as required by Civ. R. 56(C), falls short of its proffer. Bard's testimony could support at least two equally divergent inferences: (1) that Lovell was responding to an emergency call as a result of being called upon to do so or (2) that Lovell, while off duty, was not dispatched or called upon to respond an emergency, but acted on his own accord.

The nature of the call as a burglary in progress is said by the appellees to be supported by a dispatcher's affidavit and radio logs. Appellees' contention, however, is not well taken. The dispatcher, through her affidavit, attested only to the accuracy of the radio log report for November 9, 1992, between the hours of 2:00 p.m. and 4:00 p.m. Contrary to counsel's assurances at oral argument, no explanation is given for the "code" numbers contained in the log report. Accordingly, we are unable to discern whether the radio traffic referred to at 15:12 hours, concerning a "code 12A," relates to a burglary pursuit. A burglary pursuit has been recognized as a sufficient "emergency" for purposes of the immunity statute. *Moore v. Columbus* (1994), 98 Ohio App.3d 701, 649 N.E.2d 850; *Ladina v. Medina* (Jan. 31, 1990), Medina App. No. 1825, unreported, 1990 WL 7993.

Further, when viewing the radio logs in a light most favorable to McGuire, Lovell's claim that he called dispatch prior to entering the chase is called into question. Though certain code numbers in the November 9, 1992 radio log are not defined, the numbers corresponding with particular sheriff officers are. "U–43" is listed for Deputy Lovell. There exist, however, no radio transmissions from or to "U–43" until after the 15:15 (3:15 p.m.) dispatcher report of an incident "involving U–43," at "Madison and SR 309 West." The only radio transmission apparent, from or to Deputy Lovell, is listed as "Time: 15:17 [3:17 p.m.] From: U–43 To: SO."

In *Horton v. Dayton* (1988), 53 Ohio App.3d 68, 558 N.E.2d 79, an officer and city sought immunity where they argued it was undisputed an officer's collision occurred while in response to an emergency call. There, a triable issue of fact was found based, in part, on the officer's radio card failing to evince that he was actually responding to an emergency call. *Id.* In *Horton*, it was undisputed that an emergency call had gone out to the officer. *Id.* Here, the radio logs do not support appellees' contentions that a call was made to Deputy Lovell or that the nature of the alleged call was that he make a burglary pursuit.

█ Finally, in McGuire's reply to defendant's motion for summary judgment, he submitted the Ohio Crash Report from the incident, which includes the statement of Deputy Lovell. Though appellees argue the entire report is not admissible for a summary judgment review, the statement of Deputy Lovell, identified by him at his deposition, is a "written admission" pursuant to Civ.R. 56(C) and is admissible non-hearsay evidence under Evid.R. 801(D)(2)(a).

Though Deputy Lovell concedes he was off duty while en route to work on November 9, 1992, in his statement Lovell reported that he "heard radio traffic that Detective Potts was enroute [*sic*] to an in-progress burglary." Upon hearing this dispatch, Lovell claimed, "I radioed that I was enroute [*sic*] to the call to assist." Nowhere in Lovell's statement did he report he was dispatched or called upon to assist in the pursuit. This is further evidence that reasonable minds could disagree as to whether Lovell was actually called to duty on the afternoon of November 9, 1992. See *Carter v. Columbus* (Aug. 15, 1996) Franklin App. No. 96APE01–103, unreported, 1996 WL 465252 (where an issue of fact remained as to whether an officer was responding to an emergency call, as there evidence was presented that *on duty* officer might have never actually been dispatched to an emergency, but responded on his own accord).

█ Whether Deputy Lovell was actually called to duty in response to a burglary call depends entirely on his credibility. Lovell's credibility, however, is called into question by the radio logs submitted to bolster it. When the resolution of a material fact issue raised upon a motion for summary judgment

depends solely upon the credibility of a witness, summary judgment generally should not be granted. *Manley v. Rufus Club Mozambique, Inc.* (1996), 111 Ohio App.3d 260, 264, 675 N.E.2d 1342, 1344–1345. Furthermore, as stated in *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 167, 27 OBR 196, 200, 499 N.E.2d 1291, 1295:

"Resolution of a motion for summary judgment does not include trying the credibility of witnesses. If an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question * * * then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness."

Accordingly, because the issue of whether Lovell was called to duty in response to an emergency depends on an assessment of his credibility, a disputed material factual issue remains and summary judgment is not proper. *Id.*

Appellees argue that Lovell's subjective belief that he was on duty and responding to an emergency call should be enough to demonstrate he was responding to an emergency call pursuant to R.C. 2744.02(B). Appellees cite *Agnew v. Porter* (1970), 23 Ohio St.2d 18, 52 O.O.2d 79, 260 N.E.2d 830; *Moore v. Columbus* (1994), 98 Ohio App.3d 701, 649 N.E.2d 850; and *Campbell v. Colley* (1996), 113 Ohio App.3d 14, 680 N.E.2d 201, in support of such contention. However, in all the above cases, the *on-duty officers* were expressly ordered to respond to an emergency. *Id.*

█ Here, we have only Deputy Lovell's assertion that, although off duty, he responded to a dispatch of a burglary in progress. There is absolutely no other evidence in this record that Lovell was "call[ed] to duty" to join a burglary pursuit or even personally observed an "inherently dangerous situation" necessitating his "immediate response." R.C. 2744.01(A). Accordingly, we cannot say that an off-duty officer's mere subjective belief that an emergency is occurring is sufficient to warrant a finding, as a matter of law, that the officer was responding to an emergency call to duty. R.C. 2744.02(B)(1)(a).

Appellees warn that an interpretation of "responding to an emergency call" that requires a peace officer to receive an express call to duty would prohibit an officer from pursuing a fleeing suspect passing in front of him if he were not directed to do so. First, the definition of emergency call characterizes a "call to duty" as encompassing "personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C. 2744.01(A).

Further, we do not find it an overly great burden to premise the privilege of governmental immunity upon a requirement that an *off-duty* sheriff deputy refrain from acting upon an overheard radio transmission without first perceiving some type of objectively recognizable call to duty. As noted, this may take the shape of radio dispatches, citizens reports, or even an officer's personal observance of an inherently dangerous situation. What is clear, however, is that there must be some kind of occurrence known to the officer that warrants an officer's belief that he is called to duty.

McGuire's first argument is well taken.

## II

Upon remand it may be determined that Deputy Lovell was responding to an emergency call. Accordingly, as the trial court did not state the basis upon which summary judgment was granted, we must also address the appellees' argument that Deputy Lovell's operation of his sheriff vehicle was neither willful, wanton, nor reckless as a matter of law.

The Supreme Court of Ohio has stated:

"[I]f an officer-employee of the [a police agency] inflicts injury upon an individual while the officer is operating a motor vehicle during an emergency, and that injury is the result of the officer's negligence, then the agency is immune from liability. However, if the officer operates his motor vehicle in a wanton or willful manner, then immunity does not lie." *York v. Ohio State Highway Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064.

Liability could also attach to an employee of a political subdivision if his conduct may be viewed as reckless. R.C. 2744.03(A)(6)(b). Courts, however, have viewed wanton and reckless conduct interchangeably. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 105, 559 N.E.2d 705, 708, fn. 1; *Fabrey v. McDonald* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35; *Edinger v. Allen Cty. Bd. of Commrs.* (Apr. 26, 1995), Allen App. No. 1–94–84, unreported, 1995 WL 243438.

"Wanton misconduct" has been described as "the failure to exercise any care whatsoever. * * * '[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Fabrey,* 70 Ohio St.3d at 356, 639 N.E.2d at 35, quoting *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 97, 55 O.O.2d 165, 166, 269 N.E.2d 420, 423.

■ Adopting the position of 2 Restatement of the Law 2d, Torts (1965) 587, Section 500, the Ohio Supreme Court defined "recklessness" as:

" 'The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Thompson*, 53 Ohio St.3d at 104–105, 559 N.E.2d at 708.

Reckless misconduct was contrasted with intentional misconduct when the court noted that " '[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it.' " *Id.*, quoting Restatement, *supra*, at 590, Comment *f.*

■ "Willful misconduct" has been defined as " ' "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." ' " *Edinger v. Allen Cty. Bd. of Commrs.*, *supra*, at 6, quoting *Phillips v. Dayton Power & Light Co.* (1994), 93 Ohio App.3d 111, 119, 637 N.E.2d 963, 968.

■ Here, after viewing the evidence in a light most favorable to McGuire as required by Civ.R. 56(C), we are unable to say, as a matter of law, that Deputy Lovell's conduct could not be viewed as willful, wanton, or reckless misconduct.

Mrs. Bard, testified she was driving a school van several car lengths behind Lovell's cruiser. Bard stated she "followed the cruiser into town" and noticed that as the Lovell approached the Kensington and SR 309 intersection he applied his brakes and began to slow for the red light on westbound SR 309. However, Bard stated that she then saw Lovell suddenly increase speed and turn his lights and siren on approximately two houses east of the intersection. Bard then witnessed Deputy Lovell enter the intersection and hit the "pickup-truck" behind its passenger door, flipping the truck "like matchbox cars." Bard did not recall seeing Lovell brake or swerve prior to the collision.

McGuire, seated next to the truck's passenger door, was seated closest to the direction from which Lovell was approaching. McGuire testified he saw the sheriff's cruiser approaching the intersection moments prior to the accident and did not see emergency lights or hear a siren. McGuire then contended that the deputy's lights were turned on immediately prior to impact. "I watched him hit the switch. The lights came on and boom." When asked how he saw the deputy hit the switch, McGuire stated, "I seen [*sic*] his hand come up. That's what I assume. I saw the lights just start to rotate." McGuire also stated that another

vehicle had entered the intersection prior to their vehicle and did not stop or yield for Deputy Lovell's cruiser.

Another occupant of the truck, Ray Willis, stated in his deposition that he did not hear or see the deputy's vehicle until McGuire exclaimed, "Oh shit." Willis reported that he turned to his right and saw a car with "sheriff" written on the hood, heard a brief siren, then was struck.

Deputy Lovell contended that he was travelling around 40 mph west SR 309 in a 45 mph zone after he heard the report of a burglary. Lovell stated that he turned on his siren and lights between "Parkview and Sara Drive," over a block from the intersection of Kensington and SR 309. Lovell also contended that he slowed his vehicle to 20 mph prior to entering the intersection as he saw two vehicles crossing through the intersection which "did not see me." Finally, Lovell contended that he applied his brakes and swerved to the right in an effort to avoid hitting the pickup truck.

As noted, Mrs. Bard did not recall Lovell braking or swerving. Bard further contradicted the timing of when Lovell turned on his lights and siren. McGuire and Willis placed Lovell's cruiser even closer to the intersection prior to observing any emergency signal. Finally, Bard recalled the deputy speeding up just before entering the intersection, and not slowing, swerving, or braking as Lovell claims he did.

In *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 605 N.E.2d 445, jurisdictional motion overruled (1992), 64 Ohio St.3d 1443, 596 N.E.2d 472, the township and driver of a fire department ambulance were denied judgment as a matter of law on the issue of whether an ambulance driver's operation of his vehicle was either willful, wanton, or reckless misconduct. There, the ambulance driver, with lights and siren on, entered an intersection on a green light and collided with a vehicle momentarily stopped in the intersection. *Id.* In *Brockman*, evidence was presented which, if believed, indicated the ambulance driver entered the intersection too fast and gave no regard to a vehicle previously observed in the intersection when making a right turn in front it. *Id.*

Here, there is evidence which indicates that Lovell may have accelerated into the intersection against a red light. Lovell did strike the truck with enough force to flip it like "matchbox cars." Further, Lovell's admission that he noticed other vehicles enter the intersection without yielding to him, prior to seeing McGuire's truck, could indicate that Lovell, though aware of hazards ahead of him, chose to proceed regardless. These facts, combined with the disputed contention that Lovell braked and swerved prior to impact, create a genuine issue of material fact as to whether Lovell's operation of his vehicle was willful, wanton, or reckless misconduct. *Brockman*, 78 Ohio App.3d 508, 605 N.E.2d 445; c.f. *Moore*, 98 Ohio

App.3d 701, 649 N.E.2d 850 (where it was undisputed that the officer swerved and applied his brakes in an effort to avoid a collision within an intersection).

Appellees argue that a police officer's failure to activate emergency lights and siren, while responding to an emergency call to duty, does not alone create an issue of material fact as to whether the operation of a vehicle was willful, wanton, or reckless misconduct in the event of a collision. We agree with this general principle, as noted in *Moore*, 98 Ohio App.3d 701, 649 N.E.2d 850. However, the manner in which a police officer activates his emergency lights and siren cannot be ignored. The activation of such warning devices is a "significant factor" to consider when determining whether the officer's conduct in response to an emergency call was wanton or willful misconduct. *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 127, 528 N.E.2d 578, 582.

Here, when viewing the evidence most strongly in favor of McGuire, a trier of fact could conclude that Lovell's eleventh-hour activation of his emergency lights and siren, just prior to entering the intersection, was too late to be of any use to McGuire or the other truck occupants. Though it appears undisputed that Deputy Lovell did activate his warning devices, the circumstances under which they were employed could lead to different conclusions. If McGuire's and Willis's testimonies are to be believed, a trier of fact could determine that the late activation of Lovell's lights and siren could do no more than to alert McGuire and his co-occupants that they were about to be struck.

As this is the only evidence of the care exercised by Lovell prior to striking the McGuire vehicle, save for his disputed contention that he braked and swerved, we cannot say as a matter of law that Lovell's conduct was not willful, wanton, or reckless pursuant to R.C. 2744.02(B)(1)(a) and 2744.03(A)(6)(b).

*Judgment reversed*
*and cause remanded.*

SHAW, P.J., concurs.

HADLEY, J., dissents.

HADLEY, Judge, dissenting.

The majority has concluded that the Marion County Common Pleas Court erred in dismissing appellant's complaint upon a motion for summary judgment filed by appellees. However, for the following reasons, I respectfully dissent from that conclusion.

As the majority notes, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a

matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192; *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126.

Furthermore, when reviewing a summary judgment motion, we must independently review the record to determine if summary judgment was appropriate. *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786, 787–788. Therefore, we will review the trial court's granting of summary judgment *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158.

Additionally, it is well settled that the party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 275–276; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. However, the nonmoving party "may not rest on the mere allegations or denials of his pleading." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515. Instead, once the initial burden has been met, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.*; *Dresher, supra,* at 293, 662 N.E.2d at 273–274. Otherwise, the trial court shall enter summary judgment, if appropriate, against the nonmoving party. *Dresher, supra,* at 293, 662 N.E.2d at 273–274.

In the present case, the majority found that a triable issue existed as to whether Deputy Lovell was responding to an emergency call. The majority apparently believes that under R.C. 2744.01(A), a police dispatch rises to the level of an emergency call only when the officer is personally dispatched to the scene of an emergency.

However, the legislature has broadly defined what constitutes an emergency call. Specifically, R.C. 2744.01(A) defines an "emergency call" as "a call to duty, *including, but not limited to * * * police dispatches * * ** of inherently dangerous situations that demand an immediate response on the part of a peace officer." (Emphasis added.) *Id.* By incorporating the language "including, but not limited to," the legislature has not limited emergency calls to those situations where an officer is personally dispatched to the scene of an alleged crime. Therefore, I refuse to restrict the rather open-ended definition of "emergency call" as provided by the legislature.

Moreover, I have found no Ohio case where a court has specifically required that an officer be personally dispatched to an emergency in order to be eligible for immunity. Therefore, having found no legislative or judicial authority stating

that an officer must be personally dispatched to an emergency, I cannot agree with the majority holding that, under these circumstances, Deputy Lovell was not called to duty.

Furthermore, the majority is apparently concerned that Deputy Lovell may have acted on his own accord upon hearing the dispatch and therefore was not "called to duty" as required by R.C. 2744.01(A).[1] However, it has been held that police officers have a continuing duty to obey and enforce the criminal law whether on or off duty. *Warrensville Hts. v. Jennings* (1991), 58 Ohio St.3d 206, 211, 569 N.E.2d 489, 494–495; R.C. 2921.44(A)(2) (an officer is subject to criminal liability if he negligently fails to prevent or halt the commission of an offense or to apprehend an offender, when it is in his power to do so alone or with available assistance). Therefore, a police officer need not be officially "called to duty."

Nevertheless, the majority apparently is further troubled by the fact that there are no radio transmissions from Deputy Lovell to the dispatcher until after Deputy Lovell's accident.[2] However, police officers have no duty to independently determine whether an actual emergency exists. *Agnew v. Porter* (1970), 23 Ohio St.2d 18, 25, 52 O.O.2d 79, 82–83, 260 N.E.2d 830, 834. Instead, they must be able to respond to the calls of others that help is needed in order to carry out their duty to protect the public. *Id.* Therefore, I do not believe Deputy Lovell had any duty or obligation to "cross-examine" the dispatcher as to whether a real emergency existed and/or whether she wanted him to respond.

The facts indicate that the dispatcher reported that a Code 12A suspect was fleeing. The majority believes that because the record contains no explanation as to what "Code 12A" stands for, it cannot say that an emergency existed for the purposes of immunity. *Cf. Moore v. Columbus* (1994), 98 Ohio App.3d 701, 706, 649 N.E.2d 850, 853 (holding that R.C. 2744.01 does not limit an "emergency call" only to those situations where there is an inherently dangerous situation or when human life is in danger). However, Ohio courts have consistently recognized that it is the urgent call to duty rather than the actual degree of danger that triggers the immunity afforded by R.C. 2744.02. *Agnew, supra; Fish v. Coffey* (1986), 33 Ohio App.3d 129, 130, 514 N.E.2d 896, 897–898.

In the present case, the record indicates that the dispatcher reported that a "Code 12A suspect vehicle" had been seen. I believe that the words "suspect

1. Specifically the majority found that an eye witness's testimony could support two possible inferences: (1) that Lovell was responding to an emergency call as a result of being called upon to do so or (2) that Lovell, while off duty, was not dispatched or called upon to respond to an emergency, but acted on his own accord.

2. Although Deputy Lovell testified at his deposition that he contacted the dispatcher before proceeding to respond, the record fails to contain any corroboration that he ever contacted the dispatcher upon hearing the dispatch.

vehicle" are enough to illicit a quick response by any officer in the vicinity. The very words "suspect vehicle" connote that a potential criminal has recently committed a crime and is currently in the process of fleeing the scene. Therefore, I believe that such words would invoke a sense of "urgent call to duty" in any nearby officer. See *Moore, supra,* 98 Ohio App.3d at 707, 649 N.E.2d at 854, citing *Spencer v. Heise* (1958), 107 Ohio App. 505, 507, 9 O.O.2d 48, 49, 158 N.E.2d 570, 572 (holding that "[p]rompt and efficient investigation of crime and possible crime is the strongest known deterrent to the commission of other offenses and is in the clear public interest").

Moreover, contrary to the majority's assertions, the material issue of whether Deputy Lovell was called to duty does not depend entirely upon his credibility. The radio logs support his testimony that the dispatcher reported a suspect vehicle near Deputy Lovell's location at that time. As I previously stated, the very words "suspect vehicle" connote that an offense was occurring which demanded an immediate response by the police. The call was not directed toward any particular officer, nor, as previously stated, was Deputy Lovell required to ask the dispatcher if this was truly an emergency situation prior to responding. Therefore, I believe that Deputy Lovell met his burden of proof in the present case and thus is entitled to immunity.

Further, the appellant has offered no evidence to the contrary disputing that the dispatcher's words "suspect vehicle" did not constitute a call to duty. See *Chaney, supra,* 90 Ohio App.3d at 424, 629 N.E.2d at 515; *Dresher, supra,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274 (holding that the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial once the moving party has met its burden). Having produced no corroborating evidence to support his own self-serving allegations that the dispatch was not an emergency call, I find that appellant has failed to meet his burden for summary judgment purposes. Therefore, without any corroborating evidence to rebut Deputy Lovell's contentions, there can be no disputed material fact.

Additionally, contrary to the majority's reliance on *Horton v. Dayton* (1988), 53 Ohio App.3d 68, 558 N.E.2d 79, a triable issue of fact as to whether Deputy Lovell was responding to an emergency call is not present in this case. In *Horton, supra,* the court based its finding that a triable issue of material fact existed on two factors. First, the court found that there was no record showing that the officer was actually responding to an emergency call when he was involved in an accident. Additionally, the officer had not activated his lights and siren prior to his involvement in an accident. Based on these two factors together, the court concluded that there was a genuine issue of material fact as to whether the officer was responding to an emergency call. *Id.* at 73, 558 N.E.2d at 85 (holding that

"the absence of any reference to the emergency call on the police officer's radio card on the day in question, *and* the fact that he was not using his siren and overhead light * * * " would support an inference that Dayton's police officer was not, in fact, responding to an emergency call at the time of collision). (Emphasis added.) Therefore, the court based its conclusion on the absence of both factors.

In the present case, contrary to *Horton, supra,* there is evidence that Deputy Lovell had activated his lights and siren prior to the collision. All four witnesses, including appellant's own witnesses, testified that Deputy Lovell's lights and siren were on prior to the collision. The only discrepancy in their testimony concerns when Deputy Lovell activated his lights and siren.

According to Deputy Lovell's testimony, he activated his lights and siren a couple of intersections before the collision occurred. Ms. Bard, an impartial eyewitness, testified that she saw Deputy Lovell activate his lights and siren prior to entering the intersection where the accident occurred. Next, William Ray Willis, a passenger in the truck that was hit, testified that he heard a siren prior to being hit. Finally, appellant, another passenger in the truck, testified that he saw Deputy Lovell activate his lights prior to impact. No one disputes that Deputy Lovell had his lights and siren on before the accident, only when they were activated. Therefore, there is no genuine issue regarding that fact. Instead, the record reflects that Deputy Lovell had activated his lights and siren at some point prior to impact.

I should note that neither R.C. Chapter 2744 nor Ohio case law requires a police officer to operate his lights or siren in order to be deemed to be responding to an emergency call for the purposes of immunity from civil liability. *Horton, supra,* 53 Ohio App.3d at 71, 558 N.E.2d at 83–84. Such operation is only one factor to be considered in determining whether an officer was responding to an emergency call. *Id.* at 72, 558 N.E.2d at 84–85 (holding that the fact that the officer had not turned on his siren and lights was not sufficient in itself to establish that he was not responding to an emergency call).

Additionally, R.C. 4513.21 provides, in pertinent part:

" * * * Every emergency vehicle shall be equipped with a siren * * * . Such equipment shall not be used except when such vehicle is operated in response to an emergency call or is in the immediate pursuit of an actual or suspected violator of the law * * * ."

Consequently, a police officer may activate his lights and siren only when he is on an emergency call or in the immediate pursuit of an actual or suspected violator of the law. *Moore, supra,* 98 Ohio App.3d at 709, 649 N.E.2d at 855.

In the present case, it is undisputed that Deputy Lovell had activated his lights and siren prior to the accident. Therefore, pursuant to R.C. 4513.21, one must presume that Deputy Lovell was responding to an emergency call or in the pursuit of an actual or suspected violator of the law.

The record further indicates that the dispatcher reported that a suspect vehicle had been sighted. Deputy Lovell, a police officer on his way to work, heard the dispatch. Then, within three minutes of hearing the dispatch,[3] he activated his lights and siren. At the time of the accident, he was headed in the general vicinity of the suspect's current location. Therefore, I cannot agree with the majority's finding that the trial court erred in finding no genuine issue of material fact as to Deputy Lovell's responding to an emergency call, especially in light of R.C. 4513.21.

Finally, I would add that the conclusion advocated by the majority severely undercuts the duties and expectations of police officers. The construction of R.C. 2744.02 urged by the majority could have the effect of discouraging any off-duty police officer from ever responding to a potential crime or emergency absent an official call to duty. See *Held v. Rocky River* (1986), 34 Ohio App.3d 35, 38, 516 N.E.2d 1272, 1275–1276. The Ohio Supreme Court has mandated that police officers have a continuing duty to obey and enforce the criminal law whether on or off duty. *Warrensville Hts., supra,* 58 Ohio St.3d at 211, 569 N.E.2d at 494–495. The majority opinion in this case severely undercuts this mandate. Therefore, I must decline to adopt the majority's proposal.

In conclusion, contrary to the majority's assertions, the record does contain sufficient evidence that Deputy Lovell was responding to an emergency call when he collided with appellant's truck. Assuming that appellees properly carried their burden of production, appellant then had a reciprocal burden of rebuttal to produce evidentiary material supporting their position. See *Chaney, supra,* at 90 Ohio App.3d 424, 629 N.E.2d at 515 (holding that the nonmoving party "may not rest on the mere allegations or denials of his pleading"). Appellant failed to produce sufficient corroborating evidence to support his position. Therefore, I can find no error in the trial court's decision to grant summary judgment in the present case. Accordingly, I dissent from the majority and would overrule appellant's first assignment of error and affirm the trial court judgment.

Additionally, I would respectfully dissent from the majority's conclusion that Deputy Lovell's actions may have been willful, wanton, or reckless, thereby precluding him from any potential immunity under R.C. 2744.03.

---

**3.** The elapse of time between the dispatch message and Deputy Lovell's accident with appellant.

As noted by the majority, R.C. 2744.03(A)(6)(b) precludes immunity if an employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Furthermore, " 'Malice' refers to the willful and intentional design to do injury. 'Bad faith' connotes a 'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' 'Reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." *Piro v. Franklin Twp.* (1995), 102 Ohio App.3d 130, 139, 656 N.E.2d 1035, 1041, quoting *Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 453, 602 N.E.2d 363, 366. Moreover, the "term 'willful and wanton misconduct' connotes behavior demonstrating deliberate or reckless disregard for the safety of others." *Moore, supra,* 98 Ohio App.3d at 708, 649 N.E.2d at 854.

In the present case, I have previously determined that Deputy Lovell was responding to an emergency call. Upon hearing the dispatch, Deputy Lovell activated his lights and sirens. At the time of the accident, he was headed in the general vicinity of the suspect's current location.

Deputy Lovell testified that he slowed down prior to entering the intersection where the accident occurred. Additionally, he testified that, upon seeing appellee's truck, he applied his brakes and swerved to the right. See *Moore, supra* (finding no reckless conduct when an officer swerved and applied his brakes prior to impact despite the officer's failure to activate his lights and speeding through an intersection); Cf. *Edinger v. Allen Cty. Bd. of Commrs.* (Apr. 26, 1995), Allen App. No. 1–94–84, unreported, 1995 WL 243438 (we held that a police officer who is speeding without his lights on and then collides with another car may be guilty of wanton, reckless or willful misconduct).

Additionally, contrary to the majority's assertions, Ms. Bard did recall seeing Deputy Lovell brake and veer to the right upon being shown her statement given at the time of the accident. Granted, Ms. Bard originally testified that she did not remember if Deputy Lovell had swerved or braked. However, she did admit it was possible that he had and she just could not remember. Then, later on during her deposition, appellant's own attorney handed Ms. Bard a statement she had made to police shortly after the accident. She admitted that in the report, she had stated that Deputy Lovell braked and veered to the right prior to hitting the truck.[4] Further, she admitted that, according to her statement, the truck did not try to avoid the accident.

---

4. "Q: And the officer did break [sic] and veer to the right and hit the truck—
   "A: That's what—

Ms. Bard's statement was offered for the sole purpose of refreshing her memory, as she had earlier testified that she could not remember if Deputy Lovell had swerved or braked prior to hitting the truck.[5] Ms. Bard's statement, claiming that she saw Deputy Lovell brake and swerve prior to impact, was given shortly after the accident occurred. Her deposition testimony in which she initially testified that she could not recall if Deputy Lovell had braked or swerved was given four years after the accident. Therefore, contrary to the majority, I would find Ms. Bard's testimony regarding her observations contained in the accident report to be more accurate, as it was given near the time of the incident. Furthermore, Ms. Bard herself admitted that her earlier statement would be more accurate than her current testimony.[6] Accordingly, I would conclude that her revised testimony supports Deputy Lovell's version of what occurred.[7]

Finally, the Ohio Supreme Court has concluded that where a driver fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct. *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246, 31 OBR 449, 450–451, 510 N.E.2d 386, 388–389; *Pisel v. ITT Continental Baking Co.* (1980), 61 Ohio St.2d 142, 143, 15 O.O.3d 175, 175–176, 399 N.E.2d 1243, 1244; *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. Deputy Lovell, as a police officer, owed appellant a duty of care. However, I find that Deputy

---

"Q: —according to the statement?

"A: That's what the statement says."

5. "Q: And how did—did the officer—do you remember if he ever swerved?

"A: I don't remember that.

"Q: Okay. With regard to you said you didn't remember the brakes or didn't remember the officer swerving, is it possible that he did and you just don't remember it?

"A: .It's possible. It's—

"Q: Okay.

"A: —been awhile."

6. "Q: Okay. Would the statement that you just read would that be an accurate statement of what you had—what you thought happened the date the accident occurred?

"A: It's probably more than accurate than what I can remember now.

"Q: Okay. So if there were some inconsistencies in what you said today and what was in this statement, what you said in the statement was probably more correct?

"A: I would say. Yes."

7. I find this especially true in light of the fact that it was appellant's own attorney who refreshed Ms. Bard's memory regarding Deputy Lovell's actions prior to hitting his client's truck. Specifically, the attorney cross-examined Ms. Bard as follows:

"Q: And the officer did break and veer to the right and hit the truck—

"A: That's what—

"Q: —according to the statement?

"A: That's what the statement says."

Lovell's testimony, along with Ms. Bard's testimony regarding her statement to the police, supports a finding that there is no genuine issue of material fact as to whether Deputy Lovell exercised a duty of care toward appellant.[8]  Therefore, I disagree with the majority conclusion that Deputy Lovell may have acted recklessly, willfully or wantonly.

Accordingly, I would affirm the trial court as to appellant's first assignment of error.  Additionally, I would find that Deputy Lovell's conduct was not willful, wanton, or reckless pursuant to R.C. 2744.02(B)(1)(a) and 2744.03(A)(6)(b).  Therefore, I respectfully dissent from the majority decision.

---

**8.**  I would further note that Deputy Lovell's alleged conduct in entering an intersection on a red light without stopping may arguably constitute negligence.  However, "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor."  *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35, citing *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 55 O.O.2d 165, 166, 269 N.E.2d 420, 422.  Moreover, "[s]uch perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury."  *Id.,* citing *Roszman, supra,* 26 Ohio St.2d at 97, 55 O.O.2d at 166, 269 N.E.2d at 423.  I find no such evidence concerning Deputy Lovell's conduct here that rises to the level of wanton misconduct.