[Cite as *Tadijanac v. Jefferson Twp. Bellville Fire Dept.*, 2014-Ohio-4332.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEF A. TADIJANAC | : | JUDGES: |
| | : | |
| Plaintiff - Appellee/ | : | Hon. William B. Hoffman, P.J. |
| Cross- Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| JEFFERSON TOWNSHIP BELLVILLE | : | Case No. 14CA20 and 14CA24 |
| FIRE DEPARTMENT, ET AL. | : | |
| | : | |
| Defendants - Appellants/ | : | |
| Cross- Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County
                             Court of Common Pleas, Case No.
                             12 CV 1279

JUDGMENT:                    Affirmed in Part, Reversed
                             and Remanded in Part

DATE OF JUDGMENT:            September 26, 2014

APPEARANCES:

For Plaintiff-Appellee/                For Defendants-Appellants/
Cross-Appellant                        Cross-Appellees

KATHY A. DOUGHERTY                     KENNETH A. CALDERONE
KERI YAEGER                            JOHN R. CHLYSTA
Lamkin, Van Eman, Trimble              Hanna, Campbell & Powell, LLP
& Dougherty, LLC                       3737 Embassy Parkway
500 South Front Street, Suite 200      Akron, OH 44333
Columbus, OH 43215

*Baldwin, J.*

{¶1}   Defendant-appellant Scott Gerhart appeals from the March 14, 2014 Decision of the Richland County  Court of Common Pleas overruling his request for summary judgment.  Cross-appellant Josef Tadijanac also appeals from the trial court's March 14, 2014 decision granting summary judgment in favor of appellees Craig Roberts, the Jefferson Township-Bellville Fire Department and the Jefferson Township Trustees.

STATEMENT OF THE FACTS AND CASE

{¶2}   In 1939, the Bellville Volunteer Fire Department was incorporated as an Ohio nonprofit corporation. In 1967, the Village of Bellville Council and appellee Jefferson Township Trustees ("appellee Board") decided to combine their two fire departments and change the name of the department to Jefferson Township-Bellville Fire Department, a nonprofit corporation that is largely staffed by volunteers.  The department serves both Jefferson Township and the Village of Bellville and provides emergency fire protection and emergency rescue services for the residents of both. The Constitution and By-Laws of the Jefferson Township-Bellville Fire Department provide that the organization would make recommendations to appellee Board with respect to "operations, purchases and,  selection of paid employees" and that these recommendations would be directed to the Chief, the head of the Department,  for presentation to such Board.

{¶3}   Section 3, Article 2 of the Constitution and By-Laws provides that the Fire Chief of Jefferson Township would be appointed by  appellee Board  and Section 3, Article 3 provides that the Chief would be accountable to appellee Board only and would

make reports, both written and verbal, to them as required. Pursuant to Section 3, Article 2, the Fire Chief can be removed only for just cause after a public hearing before appellee Board.

{¶4} Appellee Board hires and pays the Fire Chief, in this case appellee Chief Craig Roberts. According to Trustee Frederic Ackerman, the Fire Chief "either appoints or strongly recommends the appointment of his assistant chief and again, we exercise the ultimate control over these appointments. The chief, we delegate the day-to-day operations of the fire house to the chief and then he may delegate further down the ladder. As I say, the trustees it's not their habit to micro manage the operation, but in any significant questions we have the authority over them." Deposition of Frederic Ackerman at 32. As part of his duties, the Fire Chief (or, if he delegates the duty, his assistants) accepts or rejects department volunteers. However, if a volunteer "steps outside of a policy or gets off the rails some way," appellee Board of Trustees has the "absolute authority" to dismiss such volunteer. Deposition of Frederic Ackerman at 28. The volunteers, unlike the Fire Chief and two Assistant Chiefs, are not paid by appellee Board. Rather, they are paid per run through the Jefferson Township Firefighters Association. According to appellee Chief Roberts, appellee Board had given them a budget and "we chose to reimburse them for some of their gas and stuff that they have to use, clothes that they ruin and all that kind of stuff." Deposition of Craig Roberts at 116. Appellee Board provides Fire Department personnel with accident and sickness insurance and liability and worker's compensation insurance within the scope of their duties.

{¶5} In addition, the Fire Chief, as part of his day-to-day operational duties, sets the policies and procedures that apply to the department and trains members of the fire department. While appellee Board provides funds for the training, the Fire Chief, with the authority of appellee Board, decides how the funds are spent. After the fire department requests that specified equipment be furnished, appellee Board either approves or disapproves such request.

{¶6} Jefferson Township owns the land and fire station where the Fire Department is based and all department operations are funded by the taxpayers of Jefferson Township and the Village of Bellville.

{¶7} On June 24, 2012, the Troy Township Fire Department called for mutual aid from the Jefferson Township Fire Department and another department, Washington Township, in battling a fire. Appellant Scott Gerhart, who had been a volunteer firefighter with appellee Jefferson Township-Bellville Fire Department since 1991, responded and, with two other firefighters, took tanker 121 to the scene. Tanker 121 has a large water tank mounted on a truck chassis. A pump is mounted on the tanker to pump water in and out of the water tank. The standard Jefferson Township-Bellville Fire Department immobilization policy for the tanker required that the firefighters activate the truck airbrake and shift the transmission into neutral before activating the water pump. The tanker should be left in neutral while the pump is engaged.

{¶8} When appellant Gerhart arrived at the fire, cross-appellant Josef Tadijanac, a volunteer firefighter with the Washington Township Fire Department, was standing at the back of the Washington Township tanker. Appellant Gerhart was instructed to pull up behind the Troy Township tanker so that water could be transferred

from one tanker to the other. Appellant Gerhart testified that after receiving such request, he stopped the tanker and set the emergency air brake and got out to find out why water was being transferred from one tanker to another since it was not his department's standard practice.  Once he confirmed his instructions, appellant Gerhart got back into the tanker and pulled close enough so that the 50 foot hose could be connected to his tanker.  He pulled the tanker to within 15 feet of the Troy tanker and stopped.

{¶9}   Appellant Gerhart testified that he then set the air brake by pushing a button and put the tanker in neutral. He then waited for the engine's RPMs to run down so that the pump could be engaged.  Next, he activated the water pump by turning on a switch below the steering wheel and got out of the tanker with his fellow firefighters. They then watched cross-appellant hook up the hose to the back of the Troy tanker and waited for a signal from him that he was ready to receive water.

{¶10}  After receiving a nod from cross-appellant, who stayed at the back of the tanker, appellant Gerhart and the other firefighters opened the valve on the tanker up and started increasing the RPMs of the pump. Someone then called out for increased water pressure and appellant Gerhart responded by increasing the engine RPMs to increase water flow. The tanker surged forward, pinning cross-appellant between the two tankers and crushing his legs, which had to be amputated.

{¶11}  Subsequently, on October 19, 2012, cross-appellant filed a personal injury complaint against appellees Jefferson Township-Bellville Fire Department and Chief Craig Robert, appellant Scott Gerhart, and Isaiah Finley, who was a volunteer firefighter with the Department. On February 13, 2013, a Third Party Complaint was filed against

the Ohio Bureau of Workers' Compensation.  Pursuant to a Judgment Entry filed on March 29, 2013, the Ohio Bureau of Workers' Compensation was realigned as a party plaintiff.

{¶12}  On October 10, 2013, cross-appellant, with leave of Court, filed a First Amended Complaint adding appellee Jefferson Township Board of Trustees as a defendant.

{¶13}  A Notice of Voluntary Dismissal of Isaiah Finley without prejudice was filed on February 14, 2014. Thereafter, on February 18, 2014, the parties filed cross Motions for Summary Judgment addressing the issue of governmental immunity under R.C. Chapter 2744.

{¶14}  Pursuant to a Decision filed on March 14, 2014, the trial court overruled cross-appellant's Motion for Summary Judgment and granted summary judgment in favor of all of the defendants except appellant Scott Gerhart.

{¶15}  Appellant Scott Gerhart, On March 21, 2014, filed an appeal from the trial court's  March 14, 2014 Decision, raising the following assignment of error on appeal:

{¶16}  THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO DEFENDANT SCOTT GERHART, WHO IS IMMUNE FROM LIABILITY.

{¶17}  His appeal was assigned Case No. 14 CA 20.

{¶18}  Cross-appellant Josef Tadijanac, on March 27, 2014, also appealed from the trial court's March 14, 2014 Decision, raising the following assignments of error on appeal:

{¶19}  THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FINDING THAT DEFENDANT     JEFFERSON-TOWNSHIP  BELLVILLE  FIRE

DEPARTMENT (JTBFD) IS A POLITICAL SUBDIVISION ENTITLED TO IMMUNITY PURSUANT TO R.C. 2744.02(A)(1).

{¶20} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS JEFFERSON TOWNSHIP TRUSTEES, JEFFERSON TOWNSHIP BELLVILLE FIRE DEPARTMENT (JTBFD), AND JTBFD CHIEF CRAIG ROBERTS FINDING THEM IMMUNE PURSUANT TO R.C. 2744.02(A)(1) WHEN THE RECORD PRESENTS GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE DEFENDANTS ENGAGED IN WILLFUL, WANTON, OR RECKLESS MISCONDUCT THAT IS NOT ENTITLED TO IMMUNITY PURSUANT TO R.C. 2744.02(B) AND 2744.03(A)(5).

{¶21} His appeal was assigned Case No. 14 CA 24.

{¶22} As memorialized in a Judgment Entry filed on April 30, 2014, this Court granted the Motion to Consolidate filed by appellant Gerhart and consolidated the two cases.

STANDARD OF REVIEW

{¶23} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212(1987). As such, we must refer to Civ.R. 56(C).

{¶24}   Civ.R. 56(C) states that "[s]ummary judgment shall be rendered forthwith if, the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶25} Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 358–359, 1992-Ohio-95, 604 N.E.2d 138.

{¶26}   Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.,* 65 Ohio St.3d 621, 629, 605 N.E.2d 936(1992), citing *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 65–66, 375 N.E.2d 46(1978).

{¶27} In deciding whether there exists a genuine issue of fact, the evidence must be viewed in the nonmovant's favor. Civ.R. 56(C). Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion. *Turner v. Turner,* 67 Ohio St.3d 337, 341, 1993-Ohio-176, 617 N.E.2d 1123, 1127.

{¶28} Appellate review of summary judgments is *de novo. Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 1996-Ohio-336, 105, 671 N.E.2d 241; *Smiddy v. The*

*Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212(1987). We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker,* 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327(9th Dist.1995).

{¶29} Because they are interrelated, we shall address the assignments of error together, applying the above standard of review.

{¶30} Appellant Gerhart, in his sole assignment of error, argues that he was immune from liability and that, therefore, the trial court erred in denying his Motion for Summary Judgment. Cross-appellant Josef Tadijanac, in his two assignments of error, argues that the trial court erred in granting summary judgment in favor of appellees Board, Jefferson Township-Bellville Fire Department and Chief Craig Roberts.

{¶31} At issue in the case sub judice is whether or not appellees and appellant Gerhart are immune from liability. A three-tiered analysis is required to determine whether a political subdivision is immune from tort liability pursuant to R.C. 2744. *Green Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 556–557, 2000-Ohio-486, 733 N.E.2d 1141; *Smith v. McBride,* 130 Ohio St.3d 51, 2011–Ohio–4674, 955 N.E.2d 954, ¶ 13–15. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or a proprietary function. *Green Cty. Agricultural Society,* at 556–557, R.C. 2744.02(A)(1). That immunity, however, is not absolute. R.C. 2744.02(B); *Cater v. Cleveland,* 83 Ohio St.3d 24, 697 N.E.2d 610 (1998). The second tier of the analysis requires a court to determine whether any of the five listed exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political

subdivision to liability. "In cases involving the alleged negligent operation of a motor vehicle by an employee of a political subdivision, the second tier of the analysis includes consideration of whether the specific defenses of R.C. 2744.02(B)(1)(a) through (c) apply to negate the immunity exception of R.C. 2744.02(B)(1)." *Smith v. McBride,* 2011–Ohio–4674, ¶ 14 citing *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003–Ohio–3319, 790 N.E.2d 781, ¶ 8. "If any of the exceptions to immunity of R.C. 2744.02(B) do apply, and if no defense in that section applies to negate the liability of the political subdivision under that section, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744 .03 apply to reinstate immunity." *Id.* at ¶ 15 citing *Colbert* at ¶ 9.

{¶32} There is no dispute that Jefferson Township is a political subdivision. The parties dispute, however, whether appellee Jefferson Township-Bellville Fire Department is an agent of the political subdivision entitled to immunity pursuant to R.C. 2744.02(A)(1).

{¶33} R.C. 2744.01(F) states, in relevant part, as follows: "'Political subdivision' or 'subdivision' means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Appellee Jefferson Township-Bellville Fire Department is a corporate entity as it is listed with Secretary of State as a non-profit corporation.

{¶34} In *Cincinnati Ins. Co. v. Rose*, 63 Ohio Misc.2d 1, 612 N.E.2d 819 (C.P. 1992), the court addressed the issue of whether or not the Hartford Volunteer Fire Department, a not-for-profit private fire company, was a political subdivision. In granting

summary judgment to the injured party in such case, the court held as follows in finding that the Fire Department was not a political subdivision:

> R.C. 2744.01(F) defines a "political subdivision" as any " * * * other body corporate and politic responsible for governmental activities. * * * " There is no doubt that the Hartford Volunteer Fire Department is a corporate entity. According to the statute, however, it must also be a body politic. In that regard, its argument fails. It is true that it performs functions which are also provided by governmental units; however, that fact alone does not make the fire company a "body politic." If that were the case, private trash haulers and private not-for-profit schools would also be included. Any definition of "body politic" must include an element of governmental control. No governmental entity controls the operations and activities of the Hartford Volunteer Fire Department, and the general public cannot, directly or indirectly by vote or otherwise, control its operations, activities, and membership. It is rather obvious that the Hartford Volunteer Fire Department does not want such control. If it did it could organize as a township or joint-township firefighting agency under the applicable statutes.
>
> There is no doubt that the members of the Hartford Volunteer Fire Department are all civic-minded and have the general good of their community foremost in their minds. If that were not the case, they would not volunteer to put their lives in

jeopardy for those in their community. Their activities assist those in need and they are to be congratulated. But this court cannot grant immunity because of their good deeds. Only the legislature can do that.

Id at 7.

{¶35} As noted by the court in *Rush v. City of Mansfield*, 771 F.Supp 827 (N.D. Ohio 2011), a volunteer fire department is not entitled to immunity "unless directly controlled by a municipality." Id at 875-876.

{¶36} The issue thus becomes the degree of control that Jefferson Township, through its Trustees, exercises over appellee Jefferson Township-Bellville Fire Department.  As is stated above, the Constitution and By-Laws of the Jefferson Township-Bellville Fire Department provide that  the organization would make recommendations to appellee Board with respect to "operations, purchases and, selection of paid employees" and that these recommendations would be directed to the Chief, the head of the Department,  for presentation to such Board. The record demonstrates that appellee Board appoints the Department's Fire Chief and pays him a salary. Appellee Board also pays a salary to two Assistant Chiefs. Pursuant to Section 3 of the Constitution and By-Laws, the Chief is appointed for an indefinite period of time and can "removed only for just cause and after a public hearing before the Board of Trustees of Jefferson Township." Section 3, Article 2 provides that the Fire Chief "shall be accountable to the Jefferson Township Board of Trustees only, and shall make written and verbal report thereto as they may require." The Fire Chief attends Trustee meetings to keep appellee Board advised of departmental issues.  While appellee

Board does not oversee the acceptance or rejection of volunteer firefighters, which is delegated to the Fire Chief, it has the absolute authority to dismiss a volunteer who "we feel steps outside of a policy or gets off the railing some way,…' Deposition of Frederic Ackerman at 28.

{¶37} In addition, Jefferson Township owns and insures the land and building where the Department is based and purchases and own all firefighting equipment. Any purchases are at the request of the Fire Department. Appellee Board also provides all emergency response personnel with workers' compensation coverage and with accident and sickness insurance. They also provide liability coverage to department personnel acting within the scope of their duties.

{¶38} Furthermore, appellee Board allocates money towards firefighter training and, according to David Taylor, the Township's fiscal officer, the Fire Chief, with the authority of the Board of Trustees, determines how to spend such money.  Taylor, during his deposition, testified that the Fire Chief attended every Trustee meeting and kept the Trustees apprised of what he was doing.  Taylor testified that all department operations where funded by the taxpayers of Jefferson Township and the Village of Bellville. According to him, "basically the taxes collected from the village are actually funneled through to the township. So in other words, basically we assess the citizens or residents of Bellville. They vote on the levy." Deposition of David Taylor at 41.

{¶39} Based on the foregoing, we find that the trial court did not err in holding that appellee Jefferson Township-Bellville Fire Department "acts operates as an arm of the trustees" and is "integrated with Jefferson Township."  The fire department acts under the authority of appellee Board.

{¶40} The next issue for determination is whether or not appellees are immune from liability pursuant to R.C. 2744.02 and 2744.03. R.C. 2744.02 establishes governmental immunity for political subdivisions and their employees: " * * * [a] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.01(C)(2)(a) states that a "governmental function" includes firefighting.

{¶41} R.C. 2744.02(B) provides exceptions to immunity. Such section provides, in relevant part, as follows: " (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:…

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is

in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;..

{¶42} In *Anderson v. Massillon*, 134 Ohio St.3d, 2012-Ohio-5711, 983 N.E.2d 206, the Ohio Supreme Court stated, in relevant part, as follows:

[A]s the historical development of these terms in our jurisprudence demonstrates, "willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable. We therefore disavow the dicta contained in *Thompson,* 53 Ohio St.3d at 104, 559 N.E.2d 705, fn. 1, that "willfulness," "wantonness," and "recklessness" are equivalent standards.

Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Tighe v. Diamond,* 149 Ohio St. at 527, 80 N.E.2d 122; *see also Black's Law Dictionary* 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty).

Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Hawkins,* 50 Ohio

St.2d at 117–118, 363 N.E.2d 367; *see also Black's Law Dictionary* 1613–1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results). Id at paragraphs 31-33.

{¶43} Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson v. McNeill,* 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990).

{¶44} Cross-appellant argues that the trial court erred in granting summary judgment in favor of appellees Jefferson Township-Bellville Fire Department, Fire Chief Craig Roberts and Board because there are genuine issues of material fact in dispute as to whether they engaged in willful, wanton or reckless misconduct. Cross-appellant argues that there was an "industry-wide safety procedure" of using wheel chocks on the type of vehicle used in this case and that there was no policy for, or training relating to, using wheel chocks on tanker 121. Cross-appellant notes that Mark Schockman, an expert in the area of fire department operation and management, in his affidavit which was attached to cross-appellant's memorandum in opposition to the opposing Motion for Summary Judgment, indicated that "[f]or many years, it has been a industry wide standard to chock the wheels of firefighting vehicles, including tankers, if they are unmanned at active fire scenes to prevent them from moving…"

{¶45} However, there is no evidence of wanton, willful or reckless conduct in this case. Appellee Jackson Township-Bellville Fire Department, in this case, did have a

standard operating procedure for immobilization that involved the use of an air brake and putting the tanker in neutral. While the failure to use wheel chocks may have been negligent, there is no evidence of intent to harm someone or a failure to exercise any care whatsoever. We note that there is no law in Ohio mandating the use of wheel chocks.

{¶46} Finally, assuming, arguendo, that appellees were not entitled to immunity under R.C. 2744.02(B)(1), we find that R.C. 2744.03(A)(3) operates to reinstate immunity. R.C. 2744.03(A)(3) restores immunity for the political subdivision "if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

{¶47} As the Ohio Supreme Court in *Elston v. Howland Local School,* 113 Ohio St.3d 314, 2007–Ohio–2070, 865 N.E.2d 84, noted: "the focus of subsection (A)(3) is that the employee be engaged in policy-making, planning, or enforcement. …R.C. 2744.03(A)(3) does not have language limiting its grant of immunity. In other words, a political subdivision may assert the immunity defense when an employee who has the duty and responsibility for policy-making, planning, or enforcement by virtue of office or position actually exercises discretion with respect to that power. This immunity exists even if the discretionary actions were done recklessly or with bad faith or malice."*Id.* at ¶ 27.

{¶48} A discretionary act under R.C. 2744.03 involves a heightened amount of official judgment or discretion. *Inland Prods., Inc. v. Columbus,* 193 Ohio App.3d 740,

2011–Ohio–2046, 954 N.E.2d 141, ¶ 62 (10th Dist.). Routine decisions that require little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance do not create a defense to liability. *Frenz v. Springvale Golf Course & Ballroom,* 8th Dist. Cuyahoga No. 97593, 2012–Ohio–3568.

{¶49} We concur with appellees that the failure to purchase and use wheel chocks and the decision to enact the standard operating procedures that were used for immobilization of the tanker were discretionary acts with respect to policy-making, planning, or enforcement powers in the use of the department's equipment and resources. We agree with appellees that the "Department's standard operating procedures and decisions on what equipment to put on its trucks were discretionary actions with regard to policy making, planning and enforcement powers in the use of the Department's equipment and resources."

{¶50} Based on the foregoing, we find that appellees Board and Jefferson Township-Bellville Fire Department  were entitled to immunity and that the trial court did not err in granting summary judgment in their favor.

{¶51} We further find that the trial court did not err in finding that appellee Chief Roberts was immune from liability under R.C. 2744.03(A)(6). Appellee Chief Roberts, as the paid Fire Chief, is an employee of the political subdivision is entitled to immunity under R.C. 2744.03(A)(6) provided that he did not act maliciously, in bad faith, or in wanton or reckless manner. There is no evidence that he did so. He was not at the scene or involved in the use of tanker 121.

{¶52} We must next address appellant Scott Gerhart's argument that the trial court erred in denying his Motion for Summary Judgment. The trial court, in its March

14, 2014 Decision, held that because cross-appellant contended that he had evidence that appellant Gerhart neither applied the air brake nor shifted the tanker into neutral, summary judgment was not proper in favor of appellant Gerhart.

{¶53} Cross-appellant, in response to appellant's argument, contends initially that appellant Gerhart was not an "employee" of the Jefferson Township Trustees and, therefore, was not entitled to immunity under R.C. 2744.03(A)(6). Such section confers a general grant of immunity, which specified exceptions, to "employees" of political subdivisions.

{¶54} R.C. 2744.01(B) states, in relevant part, as follows:

Employee" means an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision. "Employee" does not include an independent contractor and does not include any individual engaged by a school district pursuant to section 3319.301 of the Revised Code. "Employee" includes any elected or appointed official of a political subdivision….

{¶55} Volunteer firefighters are considered "employees" for purposes of R.C. 2744.03(A)(6). See *Bowlander v. Ballard,* 6th Dist. Sandusky No. S–02–029, 2003–Ohio–2907, paragraph 21, citing to *Salmon v. Jordan* (Nov. 12, 1999), Portage App. No. 98-P-0096. See, also, *Erie Insurance Group v. Baum* , 83 Ohio Misc.2d 1, 6, 677

N.E.2d 1266 (1993) and *Reyes v. Lochotzki*, 6th Dist. Ottawa No. OT-05-034, 2006-Ohio-1404.

{¶56} R.C. 2744.03(A)(6) grants employees of political subdivisions immunity from liability, unless any of three exceptions to that immunity apply. *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 21. Those exceptions are (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; and (3) civil liability is expressly imposed upon the employee by a section of the Revised Code. R.C. 2744.03(A)(6)(a)-(c).

{¶57} Appellant maintains that none of these exceptions apply and that he is entitled to immunity. In turn, cross-appellant argues that the trial court did not err in denying appellant's Motion for Summary Judgment because there are genuine issues of material fact as to whether appellant engaged in willful, wanton, or reckless misconduct.

{¶58} In the case sub judice, the standard procedure for operating tanker 121 was to first activate the airbrake, then put the truck in neutral, next activate the pump by engaging the power-takeoff and finally exiting the cab to operate the pump controls, which were on the side of the tanker. We note that there is a dispute as to whether or not appellant Gerhart put the truck in neutral.

{¶59} The trial court, in its Decision, stated, in relevant part, as follows:

> If the evidence at trial that the defendant applied the airbrake and omitted to shift the truck to neutral, that would be negligent conduct. There is no evidence that he was callous or

indifferent to the safety of other firefighters. If however the evidence is that he neither applied the brake nor shifted the truck to neutral, that could conceivably be evidence of a failure to exercise any care. Because the plaintiff contents he has such evidence, summary judgment must be overruled for defendant Gerhart.

{¶60} The issue thus becomes whether or not there is a genuine issue of material fact as to whether appellant Gerhart applied the air brake.

{¶61} During his deposition, appellant Gerhart testified that, when he arrived on the scene he set the air brake and put the tanker in neutral and then waited for the RPMs of the engine to go down. He then exited the tanker and was told that water needed to be transferred from one tanker to the other. Appellant Gerhart then got back into the tanker and pulled the tanker closer to the Troy tanker so that the water could be pumped. The following testimony was adduced when he was asked what he did after stopping the tanker:

{¶62} Q:    All right. Once you stop the truck in this position, what did you then do?

{¶63} A:    Then I set the brakes. Put it in neutral. Waited for the RPM's on the engine to run down so the pump could be engaged.

{¶64} Q:    How do you set the brake?

{¶65} A:    There is a button that you pull out to set the air brakes.

{¶66} Q:    Okay, Then you literally have a gear shift on it and you put it in neutral?

{¶67} A:     Yes.

{¶68} Deposition of Scott Gerhart at 76-77.

{¶69} Appellant Gerhart further testified that after the tanker was moving towards cross-appellant, firefighter Isaiah Finley "got into the truck and immediately hit the brake." Deposition of Scott Gerhart at 88-89. Finley put the vehicle in reverse and backed it up.  Appellant Gerhart testified that Finley had to turn the air brakes off in order to reverse the truck.

{¶70} Firefighter Ryan Reasor,  who was with cross-appellant and Finley at the scene, testified during his deposition that he remembered hearing the air brake after appellant Gerhart moved the tanker towards the other tanker. He later testified that after Finley jumped into the driver's seat to hit the brakes, he did not hear an airbrake. We find that this is not inconsistent with his earlier testimony.  Finley, when asked during his depositions, testified that he was unable to recall whether or not the air brakes were on when he got into the cab. He testified that you released the air brake by pushing it in and did not recall pushing it in.   Finley did not testify that appellant either did, or did not, activate the air brake.

{¶71} Gordon Peter, who was the Assistant Fire Chief, testified that he went to the scene after the accident and spoke with appellant Gerhart. He testified that appellant Gerhart told him that he had set the brake.

{¶72} Thus, there was testimony from appellant and Reasor that appellant activated the air brake.

{¶73} Cross-appellant contends that the tanker could only have moved if it was left in drive and the airbrake was not engaged. He notes that, during his deposition,

appellant Gerhart stated that if the vehicle was in drive with the pump activated and the air brake was not used, it could move forward. However, we concur with appellant Gerhart that this does not mean that the only time the tanker could move was if the air brake was not activated. Cross-appellant also points to testimony from Rodney Walker, who was the previous Fire Chief, that if the truck was in low gear and the air brake set, "[i]t would take quite a bit to move the truck." Deposition of Rodney Walker at 45. Cross-appellant contends that "if the air brake was properly set, in order for the tanker to move forward it would have to overcome the air brake, the uphill grade and the weight of the water to move forward" and "[t]his would take time and a significant level of RPMs." According to cross-appellant, based on the witnesses' testimony, the air brake could not have been engaged because the engine was just revving up and the tanker moved forward before any water under pressure began moving through the hose. However, there is no evidence in the record establishing exactly how much energy was needed to overcome the brakes or how quickly the engine/pump accelerated, among other factors. Rather, cross-appellant merely speculates as to such factors.

{¶74} While cross-appellant argues that appellant acted wantonly or recklessly in failing to use wheel chocks, there is no evidence that appellant was responsible for the department's wheel chock policy or that wheel chocks were available to him.

{¶75} In short, upon our review of the record, we find that there is no evidence that appellant, who may arguably have been negligent, engaged in willful, wanton, or reckless misconduct.

{¶76} Based on the foregoing, we find that the trial court erred in denying appellant Gerhart's Motion for Summary Judgment.

{¶77} Accordingly, cross-appellant's two assignments of error are overruled and appellant's sole assignment of error is sustained.

{¶78} The judgment of the Richland County Court of Common Pleas is affirmed in part and reversed and remanded in part. This matter is remanded to the trial court for further proceedings consistent with this Opinion.

By: Baldwin, J.

and Wise, J. concur.

Hoffman, P.J. concurs in part
and dissents in part

*Hoffman, P.J., concurring in part and dissenting in part,*

{¶79}  I concur in the majority's analysis and disposition of Cross-appellant's two assignments of error.

{¶80}  However, I respectfully dissent from the majority's disposition of Appellant's assignment of error.  While I agree Gerhart was an employee for purposes of R.C. 2744.03(A)(6), I find, when considering the evidence in the light most favorable to Appellee, reasonable minds could find Gerhart acted recklessly.  Putting the tanker in neutral was the most critical of the steps which needed to be taken to prevent a substantial risk of serious harm because a revved engine would overcome the air brakes, even if the air brakes had been engaged by Gerhart.  Accordingly, I would affirm the trial court decision denying Appellant's Motion for Summary Judgment.